(No. 79680.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. STEPHANIE J. WARREN, Appellee.

*Opinion filed September 26, 1996.*

352

James E. Ryan, Attorney General, of Springfield, and Marc Bernabei, State's Attorney, of Princeton (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson and Catherine Glenn, Assistant Attorneys General, of Springfield, of counsel), for the People.

Matthew A. Maloney, of Pierson, Maloney & Ray-field, of Princeton, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Stephanie Warren, was charged by information in the circuit court of Bureau County with "unlawful interference with child visitation rights per court order" in violation of section 10—5.5 of the Criminal Code of 1961 (720 ILCS 5/10—5.5 (West 1994)). Defendant moved for dismissal of the information on the grounds that the instrument was insufficient and that the statute was unconstitutional. The circuit court, finding the statute unconstitutional, granted defendant's motion. The State appealed directly to this court. 134 Ill. 2d R. 603. We now reverse in part, affirm in part and remand for further proceedings.

## BACKGROUND

The facts may be briefly stated as follows. On June 28, 1995, a complaint was filed against defendant for

violating the unlawful visitation interference statute. The complaint charged that "defendant did unlawfully detain a child with the intent to deprive Rick Warren with visitation rights in violation of an existing court order." Further, the complaint ordered defendant's appearance in court on July 7, 1995.

On July 7, defendant filed a motion to dismiss the complaint on the basis that it failed to allege sufficient facts to inform her of the exact nature of the alleged offense and, further, that the statute alleged to have been violated, itself, violated the separation of powers clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. II, § 1) and the due process and equal protection clauses of the Illinois and federal constitutions (Ill. Const. 1970, art. I, § 2; U.S. Const., amends. V, XIV).

On August 14, 1995, a criminal information was filed amending the complaint to read that "defendant knowingly detained her daughter with the intent to deprive Richard Warren of his visitation rights in violation of visitation provision in Bureau County Court Order cause number 93—D—3."

After a hearing on defendant's motion, the trial court declared the statute unconstitutionally vague and violative of equal protection, due process and separation of powers. Accordingly, the court dismissed the complaint.

## DISCUSSION

The singular issue presented for our review is whether the trial court erred in finding the unlawful visitation interference statute unconstitutional. The statute provides, in relevant part:

> "(b) Every person who, in violation of the visitation provisions of a court order relating to child custody, detains or conceals a child with the intent to deprive another person of his or her rights to visitation shall be guilty of unlawful visitation interference.

\*\*\*

(d) Any law enforcement officer who has probable cause to believe that a person has committed or is committing an act in violation of this Section shall issue to that person a notice to appear.

\* \* \*

(g) It is an affirmative defense that:

    (1) a person or lawful custodian committed the act to protect the child from imminent physical harm, provided that the defendant's belief that there was physical harm imminent was reasonable and that the defendant's conduct in withholding visitation rights was a reasonable response to the harm believed imminent;

    (2) the act was committed with the mutual consent of all parties having a right to custody and visitation of the child; or

    (3) the act was otherwise authorized by law.

(h) A person convicted of unlawful visitation interference shall not be subject to a civil contempt citation for the same conduct for violating visitation provisions of a court order issued under the Illinois Marriage and Dissolution of Marriage Act." 720 ILCS 5/10—5.5 (West 1994).

Initially, we note that a statute enjoys a strong presumption of constitutionality and the challenging party bears the burden of establishing its invalidity. *People v. P.H.*, 145 Ill. 2d 209, 233 (1991). Our duty, if it can reasonably be done, is to construe enactments so as to sustain their constitutionality and validity. *People v. Davis*, 93 Ill. 2d 155, 161 (1982). Where construction is doubtful, such doubt will be resolved in favor of the validity of the challenged provision. *People v. Bales*, 108 Ill. 2d 182, 188 (1985), quoting *Continental Illinois National Bank & Trust Co. v. Illinois State Toll Highway Comm'n*, 42 Ill. 2d 385, 389 (1969). Further, whether a statute is wise or desirable is not a concern for the court. Rather, it is wholly for the legislature to balance the advantages and disadvantages of legislation. *Braeburn Se-*

*curities Corp. v. Smith*, 15 Ill. 2d 55, 59 (1958); *People ex rel. Chicago Dental Society v. A.A.A. Dental Laboratories, Inc.*, 8 Ill. 2d 330, 334 (1956). That the court might regard certain provisions as unnecessary is immaterial to the constitutionality inquiry. See *A.A.A. Dental Laboratories, Inc.*, 8 Ill. 2d at 334. With these principles in mind, we consider the various challenges to the constitutionality of section 10—5.5, the unlawful visitation interference statute.

## Vagueness

Due process demands that a statute must not be so vague that persons of common intelligence must necessarily guess at either its meaning or its application. *People v. Hickman*, 163 Ill. 2d 250, 256 (1994). That is not to suggest, however, that mathematical certainty in language is required. *People v. Fabing*, 143 Ill. 2d 48, 53 (1991). Where the statute does not impinge on first amendment rights, due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited, and (2) the statute provides sufficiently definite standards for law enforcement officers and triers of fact that its application does not depend merely on their private conceptions. *Hickman*, 163 Ill. 2d at 256-57.

The trial court held that the statute was vague and uncertain in two regards. The court first noted that the confusion begins with the words "unlawful visitation." The court observed that very few crimes have a "redundant unlawful" in front of the title. "We do not have unlawful murder or unlawful battery." The term "visitation interference" alone, the court noted, connotes visitation misconduct.

Defendant asserted no vagueness challenge below. In her responsive brief here, however, she contends that

the statute lacks definite standards and is susceptible to multiple interpretations with multiple possible results.

We disagree with both the trial court's and defendant's assessment of the statute. The term "unlawful visitation" appears as part of the title as well as in the text of the provision. In construing a statute, every part, including its title, must be considered together. *People v. Hetzel*, 243 Ill. App. 3d 83, 85 (1993), citing *Wilcoxen v. Paige*, 174 Ill. App. 3d 541 (1988). Viewing the language of the unlawful visitation interference statute as a whole, we believe that a person of fair intelligence is given fair warning as to what conduct is proscribed. The allegations in the information charging the defendant indicate that defendant committed the offense of unlawful visitation interference in that she knowingly detained her daughter with the intent to deprive Richard Warren of his visitation rights, in violation of visitation set forth in the Bureau County court order in cause number 93—D—3. The nature of the offense is clearly stated in terms commonly used and understood.

Secondly, the statute provides sufficient guidelines for its proper application. In that regard, we note that the statute requires for the issuance of a notice to appear that a police officer have probable cause to believe that a person has violated the terms of a visitation order. 720 ILCS 5/10—5.5(d) (West 1994). A notice to appear, as was used in this case, is a means by which a person may be brought before the court without the inconvenience of immediate arrest. 1 Ill. Jur. *Criminal Law & Procedure* § 5:07, at 418 (1992). Such a notice may be issued whenever a peace officer has probable cause to make a warrantless arrest. See 725 ILCS 5/107—12 (West 1994).

In the context of a warrantless arrest, probable cause exists when the officer has reasonable grounds to believe that the person is committing or has committed

an offense. *People v. Tisler*, 103 Ill. 2d 226, 236-37 (1984), citing *People v. Wright*, 56 Ill. 2d 523, 528-29 (1974), quoting *Brinegar v. United States*, 338 U.S. 160, 175-76, 93 L. Ed. 1879, 1890, 69 S. Ct. 1302, 1310-11 (1949). To determine whether a warrantless arrest meets the "reasonable-grounds/probable-cause requirement, the trial court must decide whether 'a reasonable and prudent man, having the knowledge possessed by the officer at the time of the arrest, would believe the defendant committed the offense.'" *Tisler*, 103 Ill. 2d at 237, quoting *People v. Wright*, 41 Ill. 2d 170, 174 (1968). The statute's probable cause requirement, then, comports with fourth amendment safeguards. Clearly, mere unsupported allegations by a complainant are insufficient to support even the issuance of a notice to appear.

Given the requirements under the statute, it is clear that law enforcement officials are not dependent, for application of the statute, on their private conceptions. Whether probable cause for notice to appear in fact exists, a concern expressed by defense counsel at oral argument, is not relevant to the vagueness inquiry. It is sufficient for due process that the statute provides adequate guidelines to eliminate arbitrary or discriminatory application.

Defendant, in her brief, offers a series of questions, the answers to which she suggests are necessary to the vagueness determination. She posits, for example: Is visitation interference measured in minutes, hours or days from the time visitation is to commence? Is detention measured in hours, minutes, or days? Could a babysitter, acting at the behest of the custodial parent, be subject to a charge for a violation of the statute?

We would remind defendant that the vagueness determination is made in the factual context of each case in light of the particular facts at hand. *People v. Garrison*, 82 Ill. 2d 444, 454 (1980). Nothing in the record

suggests that the scenarios proposed by defendant are present in the case now before us. Moreover, "[t]hat there may be marginal cases in which it is difficult to determine, under a particular fact situation, whether conduct is within an enactment is not reason to hold that the language of the law is too ambiguous to define the duties and conditions involved. [Citations.]" *City of Decatur v. Kushmer*, 43 Ill. 2d 334, 336 (1969). Further, defendant may not simply conjure up hypothetical situations in which the statutory standards might conceivably be unconstitutionally vague. *Garrison*, 82 Ill. 2d at 456.

As its second vagueness challenge, the trial court found the affirmative defenses provided in the statute confusing. Concerning section 10—5.5(g)(2) (720 ILCS 5/10—5.5(g)(2) (West 1994)), the mutual agreement defense, the court stated that the language suggests that certain parties might agree to commit an offense and that their agreement be a defense. The court also questioned the meaning of section 10—5.5(g)(3), the "otherwise authorized by law" defense (720 ILCS 5/10—5.5(g)(3) (West 1994)). Incidentally, defendant did not assert an affirmative defense, nor is there any suggestion that such a defense would have been available. On appeal, defendant, nonetheless, echoes the trial court's concerns.

We perceive the trial court's concern to rest more with the operation and effect of the mutual consent provision than with the provision's clarity. Again, we disagree with both the trial court's and defendant's assessment of the provision. Section 10—5.5(g)(2) essentially provides that mutual consent of the parties will excuse an interference with a visitation order. The criminal conduct proscribed under this statute is detention or concealment with the intent to deprive another of his or her visitation rights. Section 10—5.5(g)(2) merely gives

recognition to the fact that fixed terms for visitation must sometimes yield to scheduling conflicts and other intervening factors. As a practical matter, where the necessary parties mutually agree, the requisite intent to deprive is negated, noncompliance with the court order is excused, and no offense has been committed. Thus, by their mutual assent, the parties have avoided, not agreed to, the commission of a criminal offense.

At any rate, the manner in which the affirmative defense operates does not render the statute's language unconstitutionally vague. It is sufficient for purposes of due process that the parties understand that mutual consent is available as a defense to a charge of unlawful visitation interference.

Finally, we do not find the phrase "otherwise authorized by law" unconstitutionally vague. Without resort even to the most common definitional source, we understand "otherwise authorized by law" to mean simply that the conduct in detaining or concealing a child is, for reasons not expressly provided by the act, permissible by law. Further, we perceive no difficulty, and defendant points to none, in the application of the defense by judges and juries.

Defendant has failed to meet her burden of establishing the due process violation alleged to exist in section 10—5.5. We find that the statute does not fail for vagueness.

### Due Process and Equal Protection

In her motion to dismiss, defendant asserted that the statute deprived her of "substantive due process" in that she, as a divorced person with minor children, is subject to treatment in a different fashion than are people who (1) are married and have children, (2) were never married and have children and (3) are divorced and have joint custody of their children. In its dismissal order, the trial court stated, without more, that defen-

dant's equal protection and due process arguments were well taken.

The State, in its appellate brief, initially notes that defendant's disparate treatment claim is incorrectly characterized as a due process claim. The State suggests that the substance of defendant's claim concerns, instead, equal protection. We, as apparently does defendant, agree with the State. Due process concerns fairness between the State and the individual dealing with the State, regardless of how other similarly situated persons may be treated. *Evitts v. Lucey*, 469 U.S. 387, 405, 83 L. Ed. 2d 821, 836, 105 S. Ct. 830, 841 (1985), quoting *Ross v. Moffitt*, 417 U.S. 600, 609, 41 L. Ed. 2d 341, 350, 94 S. Ct. 2437, 2443 (1974). In her responsive brief, defendant has recharacterized her disparate treatment claim as one for equal protection. Further, defendant has confined her argument to a comparison of treatment given a divorced custodial parent versus that given divorced joint custodial parents under the statute.

The constitutional right to equal protection of the law guarantees that the State must treat similarly situated persons in a similar manner. *People v. Kimbrough*, 163 Ill. 2d 231, 237 (1994). The clause does not deny the State the power to treat different classes of persons in different ways. *People v. Shephard*, 152 Ill. 2d 489, 499 (1992). Simply stated, the guarantee prohibits the State from statutorily dividing persons into different classes and providing for different treatment of each class for reasons wholly unrelated to the purpose of the legislation. *People v. Reed*, 148 Ill. 2d 1, 7 (1992).

Defendant argues that individuals who have been granted joint custody and are party to a joint parenting agreement pursuant to the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/602(b) (West 1994)) could never come within the purview of the visitation interference statute. For these

individuals, disputes and alleged breaches of the agreement may be mediated or otherwise resolved. Contrarily, a divorced custodial parent, like defendant, is subject to the terms of a visitation order and is subject either to indirect criminal contempt or criminal prosecution for violation of a visitation order. Such disparate treatment, defendant maintains, amounts to an equal protection violation.

The crux of defendant's claim is that the statute unfairly burdens a divorced custodial parent with a criminal penalty for unlawful visitation interference while divorced joint custodial parents, in the context of their parent-child relationships, are permitted the opportunity to mediate their disputes. It is apparent from the scope of defendant's argument that she perceives operation of the statute to be narrowly confined to conduct only by divorced parents within the context of their parent-child relationships. The act, which covers *"every person"* who commits the offense of visitation interference and provides an affirmative defense for *"a person or lawful custodian"* is not so limited. The law is neutral on its face, including within its coverage any individual, including one who may be a stranger to the parent-child relationship, *i.e.*, grandparents, a neighbor, even a baby-sitter.

To subject a statute to any form of equal protection review, the party challenging the law must show that it classifies persons in some manner. *People v. Wegielnik*, 152 Ill. 2d 418, 428-29 (1992), citing 2 R. Rotunda, J. Nowak & J. Young, Treatise on Constitutional Law: Substance & Procedure § 18.4, at 343-44 (1986). To show that a law, neutral on its face, violates equal protection, the defendant must show that the statute was enacted for a discriminatory purpose. *Wegielnik*, 152 Ill. 2d at 429. Defendant has neither alleged a discriminatory purpose nor provided any evidence which would support

such a finding. We therefore reject her equal protection claim.

Moreover, defendant, as a divorced custodial parent, is not similarly situated to divorced joint custodial parents. At first blush, because these individuals share some common traits, they may appear similarly situated. However, for equal protection purposes, a determination that individuals are similarly situated cannot be made in the abstract. Usually, that determination can only be made by considering the end or purpose of the particular legislation. Once a court has identified an end of government which does not in itself offend the Constitution, it can then analyze the manner in which the government has classified persons in terms of that end. 3 R. Rotunda & J. Nowak, Treatise on Constitutional Law: Substance & Procedure § 18.2, at 9 (2d ed. 1992).

Visitation is a right or permission granted to a noncustodial parent to visit with his or her child. See 750 ILCS 5/607(a) (West 1994). The welfare of a child usually requires that a parent who does not have custody of his child be given liberal visitation rights in order to assure that the child will not be estranged from that parent. *McManus v. McManus*, 38 Ill. App. 3d 645 (1976); see also 750 ILCS 5/607(a) (West 1994). The purpose of the unlawful visitation interference statute is to provide a remedy for and to deter interference by any person, including the child's custodial parent, with a noncustodial parent's right to visitation.

Traits common to both a divorced custodial parent and divorced joint custodial parents are marital status and parentage. Neither of these traits, however, is relevant to the purposes of the act. The statute operates irrespective of marital status, and because it covers "every person," its operation on defendants is also irrespective

of parentage. The single, significant trait for purposes of the statute is the capability to interfere with visitation. It is this trait which renders a divorced custodial parent, who has the capability to interfere with court ordered visitation, dissimilar to divorced joint custodial parents.

As the phrase "joint custodial parents" suggests, these individuals share custody of their children. See 720 ILCS 5/10—5(a)(3) (West 1994) (defining lawful custodian as the person or persons granted legal custody of a child or entitled to physical possession of the child pursuant to a court order). When the court determines that an award of joint custody is an appropriate arrangement, the Dissolution Act requires that the parents produce for the court an agreement which specifies each parent's powers, rights and responsibilities for the personal care of the child. See 750 ILCS 5/602.1 (West 1994). Unlike in the case of a divorced custodial parent, the Dissolution Act does not mandate visitation for joint custodial parents. See 750 ILCS 5/607 (West 1994) ("[a] parent *not* granted custody of the child is entitled to reasonable visitation rights" (emphasis added)); see also 750 ILCS 5/602.1 (West 1994). The concept of visitation is simply inapplicable in the context of such an arrangement. It follows that because visitation is not applicable within the context of the joint custodial parent-child relationship, such individuals cannot commit visitation interference against each other or be subject to prescribed penalties for such conduct.

In sum, the purpose of the statute is to deter unlawful interference with a noncustodial parent's visitation rights. In a joint custody arrangement, each parent is a custodial parent and, within the context of their parent-child relationship, neither has the ability to commit unlawful visitation interference. Contrarily, a divorced custodial parent, who does not share custody with the

noncustodial parent, is capable of committing such an offense. Because divorced joint custodial parents have no relationship to the purpose of the statute, they are not similarly situated to a divorced custodial parent. Further, that the parent-child relationship for divorced joint custodial parents is governed by a parenting agreement is the result of those individuals' relationship one with another, not the unlawful visitation interference statute.

"Equal protection is the guarantee that similar people will be dealt with in a similar manner and that people of different circumstances will not be treated as if they were the same." 3 R. Rotunda & J. Nowak, Treatise on Constitutional Law: Substance & Procedure § 18.2, at 8 (2d ed. 1992); see also *People v. Esposito*, 121 Ill. 2d 491, 500-01 (1988). The legislature is not restrained from remedying a particular problem merely because that problem exists for one group of individuals and not for another. Given that a divorced custodial parent and divorced joint custodial parents are not similarly situated for purposes of the act, equal protection is not offended by their different treatment.

In the trial court, defendant advanced an additional equal protection challenge. She there asserted that the unlawful visitation interference statute was unconstitutional because the statute gives a noncustodial parent the power to elect a civil or criminal remedy for "visitation abuse" but a custodial parent is limited to remedies afforded under the Dissolution Act.

Defendant's argument is flawed. Visitation abuse and unlawful visitation interference are separate and distinct statutory offenses. Under the unlawful visitation interference statute noncustodial parents are given a criminal remedy for interference with court ordered visitation. Under the Dissolution Act, both custodial and noncustodial parents are given a civil remedy for visitation abuse.

The Dissolution Act provides that visitation abuse occurs when a party has: (1) denied another party visitation as provided for by court order or (2) exercised his or her visitation rights in a manner that is harmful to the child or the child's custodian. 750 ILCS 5/607.1(a) (West 1994). As is apparent, either a custodial or a noncustodial parent may be aggrieved by visitation abuse.

Contrarily, only noncustodial parents can be aggrieved by visitation interference. Simply put, defendant, unlike noncustodial parents, is not entitled to a remedy for visitation interference because she, unlike noncustodial parents, is not subject to be offended by such conduct. As a custodial parent, visitation rights are not applicable to her. See 750 ILCS 5/607(a) (West 1994).

We are aware that detention and concealment under the interference statute may also constitute deprivation under the abuse statute, thereby giving a noncustodial parent the option to proceed either under the Dissolution Act or under the interference statute. However, the fact that particular conduct by a defendant presents a plaintiff with the opportunity to elect either a civil or a criminal remedy does not in and of itself implicate equal protection. As a practical matter, where visitation interference, which might also constitute visitation abuse, is committed by a person other than the custodial parent, the express remedies provided under the Dissolution Act for abuse, which include, *inter alia*, modification of the visitation order, would be ineffectual. Nevertheless, equal protection is not offended by the availability of an election.

We conclude that because the unlawful visitation interference statute creates no classifications on its face and, further, because defendant has failed to present any evidence to support a finding of discriminatory purpose, she has failed to state an equal protection

claim. Further, we conclude that because a divorced custodial parent is not similarly situated to divorced joint custodial parents for purposes of the statute, equal protection is not implicated. Finally, that an aggrieved party may elect either a criminal or a civil remedy does not, of itself, present an equal protection concern.

### Separation of Powers

Our constitution provides that the legislative, executive and judicial branches of government are separate and that "[n]o branch shall exercise powers properly belonging to another." Ill. Const. 1970, art. II, § 1. Although judicial power is vested in the courts (Ill. Const. 1970, art. VI, § 1), the separation of powers provision does not create rigid boundaries prohibiting every exercise of functions by one branch of government which ordinarily are exercised by another. *People v. Walker*, 119 Ill. 2d 465, 473-74 (1988). Thus, we have consistently recognized that the legislature, which is vested with the power to enact laws, may also enact legislation which governs judicial practices, as long as it does not unduly infringe upon the powers of the court. *People v. Bainter*, 126 Ill. 2d 292, 303 (1989).

The unlawful visitation interference statute provides that a person shall not be subject to a civil contempt citation for the same conduct for violating a visitation provision of a court order issued under the Dissolution Act. 720 ILCS 5/10—5.5(h) (West 1994). Such a provision, the trial court ruled, is violative of Illinois' separation of powers provision. We note a corresponding provision in the Dissolution Act. See 750 ILCS 5/607.1 (West 1994).

In the trial court, defendant asserted the statute's divestiture of the domestic relations division of the circuit court's jurisdiction as the basis for her separation of powers challenge. The trial court, however, did not pass on the substance of that claim, basing its rul-

ing, instead, on the statute's civil contempt provision. Defendant has not pressed her jurisdiction claim in this court. Because the trial court did not rule on defendant's jurisdiction claim and, further, because defendant does not assert the claim here, we do not address it. Consistent with the trial court's ruling, defendant here urges that the statute's restriction on the court's contempt powers is an unconstitutional infringement on the judiciary.

A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings. *In re Baker*, 71 Ill. 2d 480, 484 (1978) (citing cases). Such proceedings, while usually characterized as civil or criminal, are, strictly speaking, neither. They may best be described as *sui generis*, and may partake of the features of either. *People ex rel. Chicago Bar Ass'n v. Barasch*, 21 Ill. 2d 407, 409 (1961). Although there has been continuing debate over the difficulty in distinguishing between criminal and civil contempt (see *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 n.3, 129 L. Ed. 2d 642, 651 n.3, 114 S. Ct. 2552, 2557 n.3 (1994); *Barasch*, 21 Ill. 2d at 409), there are particular features which determine the nature of each.

Generally, civil contempt is recognized as a sanction or penalty designed to compel future compliance with a court order. See *People v. Shukovsky*, 128 Ill. 2d 210, 220 (1988). As such, civil sanctions are considered to be coercive and avoidable through obedience. *Bagwell*, 512 U.S. at 827, 129 L. Ed. 2d at 651; 114 S. Ct. at 2557. Criminal contempt, on the other hand, is punitive in nature and is instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct. *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990); see also *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441, 55 L. Ed. 797, 806, 31 S. Ct. 492, 498 (1911); *Shukovsky*,

128 Ill. 2d at 220. In sum, civil contempt occurs when the contemnor fails to do that which the court has ordered, whereas criminal contempt consists of doing that which has been prohibited. See *Betts*, 200 Ill. App. 3d at 43-45; see also R. Johnston & K. Bry, *An Overview of Illinois Contempt Law: A Court's Inherent Power and the Appropriate Procedures and Sanctions*, 26 J. Marshall L. Rev. 223 (1993).

The State urges that the legislature has not impermissibly infringed on a judicial function. It is the State's position that the purpose of the legislative restriction is, properly, in consideration of double jeopardy protections.

The State concedes that civil contempt does not implicate double jeopardy concerns. See *People v. Rodriguez*, 162 Ill. App. 3d 149 (1987); *People v. Doherty*, 165 Ill. App. 3d 630 (1988); *Small v. Commonwealth of Virginia*, 12 Va. App. 314, 398 S.E.2d 98 (1990); see also Annotation, *Contempt Finding as Precluding Substantive Criminal Charges Relating to Same Transaction*, 26 A.L.R.4th 950, 956 (1983) (citing cases where defendant held in civil contempt could *subsequently* be prosecuted on substantive criminal charges for same actions which resulted in contempt sanction). Thus, to fit the statute within the realm of permissible legislative action, the State argues that the legislature's characterization of contempt as "civil" is a misnomer and that the term "has no meaning."

Specifically, the State reasons, where a court imposes a contempt sanction to punish past misconduct, the sanction is characterized as criminal contempt. A contempt sanction for an unlawful visitation interference case arises when a spouse is held in contempt by a family court for noncompliance with a visitation order. Sanctions are only likely to be imposed after the order has been violated. It seems unlikely, the State argues,

that a court will enter a sanction designed to "coerce" the violating spouse into future compliance with the visitation order to benefit the nonviolating spouse. The State believes, instead, that if a sanction is entered, it will be designed to punish the past violation of the order, thereby showing the violator that the court's orders should be taken seriously.

As a preliminary matter, we disagree with the State's assessment of the legislature's use of the term "civil contempt." When a statute employs words, such as these, which have well-known legal significance, absent any contrary expression, courts assume that the legislature intended the words to have that meaning. *People ex rel. Mayfield v. City of Springfield*, 16 Ill. 2d 609, 615 (1959). We therefore presume that by use of the term "civil contempt," the legislature meant "civil contempt" in its usual and customary meaning.

In support of its criminal sanctions for past conduct argument, the State invites our attention to *People v. Totten*, 118 Ill. 2d 124 (1987). *Totten* teaches that the exercise of this court's power to impose criminal contempt sanctions must necessarily yield to double jeopardy prohibitions. *Totten*, however, is inapplicable here. As we have stated above, the statute expressly restricts the court's *civil contempt* power. We do not presume that the legislature meant otherwise.

The power to punish for contempt does not depend on constitutional or legislative grant. Because such power inheres in the judicial branch of government, the legislature may not restrict its use. *In re G.B.*, 88 Ill. 2d 36, 41 (1981); *Baker*, 71 Ill. 2d at 484; *People ex rel. Rusch v. White*, 334 Ill. 465, 484 (1929). We hold, therefore, that the provision in the unlawful visitation interference statute which prohibits the court's imposition of civil contempt sanctions following a conviction for unlawful visitation interference is an undue infringe-

ment on the court's inherent powers. Furthermore, even assuming that such a sanction would be, as the State argues, in the nature of criminal contempt, we are not, in this case, prepared to surrender the court's inherent authority over to legislative decisionmaking.

We are left then to consider the effect of the statute's unconstitutional contempt provision on the balance of the act. In so doing, we presume that the legislature intended to enact a statute that was consistent with our constitution. Therefore, we must give effect to as much of this statute as is possible, consistent with our constitution. See *Dornfeld v. Julian*, 104 Ill. 2d 261, 266 (1984).

In appropriate cases, an invalid portion of a statute may be severed from those portions which remain valid. Authority for severability may be found either in a specific severability provision of the particular statute or pursuant to a general severability statute. See 5 ILCS 70/1.31 (West 1994). In either case, the question of severability is essentially a question of legislative intent. *Russell Stewart Oil Co. v. State of Illinois*, 124 Ill. 2d 116, 128 (1988); *Springfield Rare Coin Galleries, Inc. v. Johnson*, 115 Ill. 2d 221, 237 (1986). In ascertaining legislative intent, we recognize that general severability statutes carry less weight than do even specific severability provisions. *People ex rel. Chicago Bar Ass'n v. State Board of Elections*, 136 Ill. 2d 513, 532 (1990).

The unlawful visitation interference statute does not contain a specific severability provision. Prior to simply applying our general severability statute, we must determine whether severance is possible. The governing test, as articulated in *Fiorito v. Jones*, 39 Ill. 2d 531, 540-41 (1968) is:

"whether the valid and invalid provisions of the Act are 'so mutually "connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole ***."' [Citation.] The provisions

are not severable if 'they are essentially and inseparably connected in substance.' [Citation.]"

In addition to application of the *Fiorito* test, before a severance provision can be given effect, the court must determine whether the legislature would have passed the valid portions of the statute absent the invalid portions. See *State Board of Elections*, 136 Ill. 2d at 534. If the legislature would not have passed the statute with the invalid portion eliminated, the entire statute must be held unconstitutional. *People ex rel. Adamowski v. Wilson*, 20 Ill. 2d 568, 582 (1960).

The primary purpose of the unlawful visitation interference statute is to deter interference by any person with a noncustodial parent's court ordered visitation. To that end, the statute (1) defines the nature of the offense, (2) provides the procedures by which a charge may be brought, (3) sets out the applicable penalties, and (4) recites the available affirmative defenses. Clearly, deterrence of visitation interference may be obtained by operation of these separate provisions. The civil contempt provision is not necessary to the achievement of that end. We therefore find that the statute is complete and capable of being executed wholly independently of the civil contempt provision.

The possibility of severance having been settled, we must next determine whether the legislature would have enacted the statute absent the contempt provision. For that purpose, we have considered the legislative debates on the unlawful visitation interference statute, previously known as House Bill 2139. There is no indication from the debates that, but for the inclusion of the contempt restriction, House Bill 2139 would have failed.

During the course of the senate debate on the bill, Senator Cullerton pointed out that one of the bar association's concerns about the bill was that, currently, if a person interfered with the visitation rights of another, he or she could either be held in contempt of court or

the aggrieved party could seek other nonpenal remedies. Many people, Senator Cullerton stated, felt it unnecessary to "go to a criminal route," as opposed to leaving such matters within the judges' contempt powers. According to Senator Cullerton, "[t]hat's why the Bar Association [was] opposed to the bill." 88th Ill. Gen. Assem., Senate Proceedings, May 17, 1993, at 59-60 (statements of Senator Cullerton).

In further debate, Senator Berman questioned whether the legislature could even interfere with the court's contempt power. In response, Senator Woodyard, who characterized the provision in terms of an amendment to the bill, stated that the amendment was requested by the Illinois Bar Association. 88th Ill. Gen. Assem., Senate Proceedings, May 17, 1993, at 62, 63 (statements of Senators Berman and Woodyard).

As is apparent from the debates, the legislature had no vested interest in the inclusion of the civil contempt provision in the statute. In point of fact, the legislature deemed such a restriction to be problematic and, indeed, questioned its authority to so restrict. Based upon our reading of the debates, we conclude that the legislature would have passed the unlawful visitation interference statute without the invalid contempt restriction portion.

In sum, the intent of the legislature may be given effect without the invalid civil contempt provision. Further, we perceive from the legislative debates that the legislature would have passed this bill without the invalid portion. Therefore, pursuant to the general severability statute (5 ILCS 70/1.31 (West 1994)), we sever that portion of the unlawful visitation interference statute which restricts the court's contempt power (720 ILCS 5/10—5.5(h) (West 1994)) and leave intact the balance of the statute.

### Other Claims

As a final challenge, the trial court noted that the

statute, by making the first two offenses for unlawful visitation interference petty offenses, may allow the custodial parent to buy out the other parent's visitation for the petty offense bond of $75. The court did not indicate in what manner the constitutional guarantees are offended by this supposed conduct and defendant does not advance the argument here on appeal. At any rate, that individuals find a way to manipulate the statute or to defeat its intended purpose does not implicate a constitutional infirmity.

## CONCLUSION

We find that the unlawful visitation interference statute is not unconstitutionally vague or violative of equal protection. That portion of the statute which restricts the court's inherent contempt powers is an undue infringement and, therefore, violative of separation of powers. Therefore, the civil contempt provision of the statute, section 10—5.5(h), is severed, and the balance of the statute is left intact.

Accordingly, we affirm in part and reverse in part the judgment of the circuit court and remand this cause to the circuit court for further proceedings.

*Circuit court affirmed in part and*
*reversed in part;*
*cause remanded.*