2020 IL App (4th) 190645

NO. 4-19-0645

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| *In re* A.M. and L.M., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (Alicia C., | ) | Clark County |
|      Petitioner-Appellant, | ) | No. 19F10 |
|      v. | ) | |
| Lucas M., | ) | Honorable |
|      Respondent-Appellee). | ) | Tracy W. Resch, |
| | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Steigmann and Justice DeArmond concurred in the judgment and opinion.

## OPINION

¶ 1        Petitioner, Alicia C., appeals the trial court's order finding she failed to abide by the provisions of a "Custody and Visitation Order" and holding her in indirect civil contempt of court. We vacate the portion of the court's order finding Alicia in indirect civil contempt but otherwise affirm the court's judgment.

¶ 2                                    I. BACKGROUND

¶ 3        Alicia and respondent, Lucas M., are the parents of twin daughters, A.M. and L.M. (born October 6, 2005). In November 2009, the parties' underlying family case was initiated by the filing of a complaint for support by the Illinois Department of Healthcare and Family Services (Department). The Department asked the trial court to order Lucas to pay child support and medical support for the parties' daughters, who resided with Alicia.

¶ 4　　　　In December 2009, the trial court entered a uniform order of support, requiring Lucas to make weekly child support payments. Thereafter, the parties continued to litigate issues related to child support and the allocation of parenting time. In August 2012, the trial court entered an "Order for Custody and Visitation," providing that the "care, custody, control, and education" of the parties' children was with Alicia, subject to Lucas having "visitation time and periods of vacation" with the children. Specifically, Lucas was granted visitation, *i.e.*, parenting time, with A.M. and L.M. on alternating weekends and holidays, and "[f]or two non-consecutive and uninterrupted ten-day increments during the summer." The court's order further provided that each parent was entitled to telephone communication with the children at reasonable times and intervals and immediate access to any records and information pertinent to the children.

¶ 5　　　　In June 2019, Lucas initiated the specific proceedings at issue on appeal by filing a "Petition to Enforce Parenting Time and Finding of Contempt," pursuant to section 607.5 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/607.5 (West 2018)). He alleged Alicia failed to comply with the trial court's August 2012 order by interfering with his ability to exercise parenting time and to communicate with the parties' children. Lucas asserted Alicia's failure to comply with the court's order was willful and contumacious and asked the court to find her "in contempt of Court." He further asked for relief, including a grant of makeup parenting time and orders that Alicia (1) comply with the parties' parenting-time schedule, (2) accommodate the children's reasonable electronic communication with him, (3) advise him of the children's current cellphone numbers and extracurricular activity schedule, (4) complete a parental education program, (5) permit the children to be enrolled in family counseling with him, (6) post a cash bond or other security to ensure future compliance with parenting time, and (7) pay his attorney fees associated with the enforcement of parenting time.

¶ 6        In July 2019, the trial court conducted hearings on Lucas's petition. The record does not contain a transcript of the hearings; however, docket entries reflect the parties presented evidence and arguments to the court and that it granted the petition.

¶ 7        In August 2019, the trial court's written order was filed, setting forth the following findings of the court:

> "5.     [Alicia] repeatedly denied [Lucas] parenting time with the minor children, including but not limited to Thanksgiving of 2018, the weekend of April 13, 2019, and summer vacation 2019.
>
> 6.     [Alicia] has failed to comply with the parenting[-]time schedule set forth in the Order of Custody and Visitation.
>
> 7.     [Alicia] has failed to comply with the information-sharing and telephonic communication provisions set forth in the Order of Custody and Visitation.
>
> 8.     [Alicia's] failure to comply with the *** provisions of the Order of Custody and Visitation was willful and contumacious and she is found in indirect civil contempt of Court."

In connection with those findings, the court ordered (1) Alicia to comply with the parenting-time, information-sharing, and telephonic-communication provisions set forth in the August 2012 custody and visitation order; (2) the parties to share transportation duties for the minor children; (3) Lucas to receive makeup parenting time of 25 days, 12 of which were specifically set forth in the court's order and 13 of which the parties were required to cooperate in scheduling; (4) the parties to complete a parenting education course for divorcing parents; (5) Lucas to have the authority to enroll the children in family counseling, Alicia to participate in the counseling if recommended by the children's counselor, and the parties to coordinate and cooperate in

scheduling the counseling sessions; and (6) Alicia to pay Lucas reasonable attorney fees of $2934, which he incurred in the enforcement of parenting time.

¶ 8        This appeal followed.

¶ 9                                   II. ANALYSIS

¶ 10        On appeal, Alicia argues the trial court did not enter a valid order for indirect civil contempt. She does not challenge the court's finding that she failed to comply with the August 2012 custody and visitation order or that her failure was willful and contumacious. Instead, she contends that because the court's order was based on her "prior, willful failures" to follow the August 2012 custody and visitation order, the contempt proceedings should have been deemed criminal in nature rather than civil. Alicia also complains that the court's order did not contain an appropriate purge provision. She asks this court to reverse the trial court's August 2019 order.

¶ 11        In response, Lucas argues that the trial court's finding of indirect civil contempt was proper and that its order provided Alicia with the ability to purge her contempt because it included "definite obligations for [Alicia] to fulfill." Lucas also asserts that even if the portion of the court's order finding Alicia in indirect civil contempt must be vacated, the remainder of the court's order was proper under the abuse-of-allocated-parenting-time provisions in section 607.5 of the Dissolution Act (750 ILCS 5/607.5 (West 2018)).

¶ 12                            A. Contempt Proceedings

¶ 13        "A court is vested with inherent power to enforce its orders and preserve its dignity by the use of contempt proceedings." *People v. Warren*, 173 Ill. 2d 348, 368, 671 N.E.2d 700, 710 (1996). "The procedures that must be followed in contempt proceedings vary according to the type of contempt at issue." *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 19, 42 N.E.3d 488. Contempt may be either direct or indirect and either civil or criminal. *In re Marriage of Betts*,

- 4 -

200 Ill. App. 3d 26, 49, 558 N.E.2d 404, 419 (1990).

¶ 14        "Contempt that occurs outside the presence of the court is classified as indirect contempt." *In re Marriage of Spent*, 342 Ill. App. 3d 643, 653, 796 N.E.2d 191, 200 (2003). "The existence of an order of the court and proof of willful disobedience of that order are essential to any finding of indirect contempt." *Id.* Here, there is no dispute that the alleged contempt was indirect, occurring outside the presence of the court.

¶ 15        Further, "[c]ivil contempt is a sanction or penalty designed to compel future compliance with a court order." (Internal quotation marks omitted.) *Felzak v. Hruby*, 226 Ill. 2d 382, 391, 876 N.E.2d 650, 657 (2007). It involves a coercive sanction rather than a punishment for past contumacious conduct. *Id.* This court has held that "[c]ivil contempt proceedings have two fundamental attributes: (1) The contemnor must be capable of taking the action sought to be coerced and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order." *Betts*, 200 Ill. App. 3d at 44. "In other words, the contemnor must have an opportunity to purge himself of contempt by complying with the pertinent court order." *Id.*; see also *People v. Covington*, 395 Ill. App. 3d 996, 1006, 917 N.E.2d 618, 627 (2009) ("The penalties in a civil contempt case serve only to coerce the contemnor to comply with a court order, and they must cease when the contemnor complies." (Internal quotation marks omitted.)); *In re Marriage of Logston*, 103 Ill. 2d 266, 289, 469 N.E.2d 167, 177 (1984) ("[T]he civil contemnor must be provided with the 'keys to his cell.' ").

¶ 16        Additionally, in the context of civil contempt, " 'the contemnor is only entitled to minimal due process, consisting of notice and an opportunity to be heard.' " *Covington*, 395 Ill. App. 3d at 1007 (quoting *In re Marriage of Cummings*, 222 Ill. App. 3d 943, 948, 584 N.E.2d 900, 903 (1991)). "The burden initially falls on the petitioner to establish, by a preponderance of the

evidence, that the alleged contemnor has violated a court order." *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 50, 65 N.E.3d 878. "Once that burden is satisfied, the burden shifts to the contemnor, who has the burden of showing that the violation was not willful and contumacious and that he or she had a valid excuse for failing to follow the order." *Id.*

¶ 17     "Criminal contempt, on the other hand, is punitive in nature and is instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct." *Warren*, 173 Ill. 2d at 368. "In contrast to the coercive purpose of civil contempt sanctions, the reasons for imposing punishment for criminal contempt are much the same as the rationale for punishing other types of misdemeanor criminal conduct—retribution, deterrence, and vindication of the norms of socially acceptable conduct." *Betts*, 200 Ill. App. 3d at 44. Also, "[i]ndirect criminal contempt proceedings must generally conform to the same constitutionally mandated procedural requirements as other criminal proceedings." *Id.* at 58. The respondent in an indirect criminal contempt proceeding is entitled to information on the nature of the charge, an opportunity to answer, the privilege against self-incrimination, the presumption of innocence, and the requirement of proof of guilt beyond a reasonable doubt. *Id.*

> "Additionally, the trial of an indirect criminal contempt charge must conform to all procedural requirements and rights normally applicable to criminal trials, including such rights as the right to counsel \*\*\*, to a public trial, to confront and cross-examine witnesses, to be personally present at trial, to testify or to remain silent, to compulsory process for obtaining witnesses, and to present the testimony of witnesses favorable to his or her defense." *Id.*

¶ 18     We note "the same conduct may form the basis for both criminal and civil contempt sanctions." *Id.* at 45-46. In other words, "an individual's failure to abide by a court order may

result in the imposition of sanctions intended to coerce compliance with the order, as well as other sanctions which are a punishment of the contemnor for his wilful disobedience of the court order." *Id.* at 46. "[T]he test for determining whether contempt proceedings are criminal or civil in nature is the dominant purpose for which sanctions are imposed." *Id.* at 47. "Any incidental results or benefits of imposing the sanctions are of no consequence in making this determination." *Id.*

¶ 19                                B. Section 607.5 of the Dissolution Act

¶ 20        In addition to the trial court's inherent power to enforce its orders through contempt, the legislature enacted section 607.5 of the Dissolution Act, setting forth expedited procedures for the enforcement of allocated parenting time. 750 ILCS 5/607.5 (West 2018). A parent may commence such an action by the filing of a petition that includes the terms of the parenting plan or allocation judgment then in effect and the nature of the alleged violation. *Id.* § 607.5(b). A party's noncompliance with an approved parenting plan or a court order must be shown by a preponderance of the evidence. *Id.* § 607.5(c). When such a finding is made, the court, acting in the child's best interest, may provide for various types of relief within its order, including (1) the imposition of additional terms and conditions consistent with the previous order or allocation of parenting time; (2) the requirement that one or both parties attend a parental-education program; (3) the requirement that the parties participate in family or individual counseling; (4) the requirement that the noncomplying parent post a cash bond or other security to ensure future compliance; (5) the requirement of makeup parenting time for the aggrieved parent or child; (6) the imposition of an appropriate civil fine; and (7) the requirement that the noncomplying parent reimburse the other parent for reasonable expenses incurred as a result of the violation. *Id.*

¶ 21        The Dissolution Act also explicitly provides that the trial court's order on a petition for the enforcement of parenting time may include "a finding that the non-complying parent is in

contempt of court." *Id.* § 607.5(c)(6). This provision speaks to a court's inherent power of contempt in its usual and customary meaning as set forth above. See *Warren*, 173 Ill. 2d at 370 (noting that "[w]hen a statute employs words, *** which have well-known legal significance, absent any contrary expression, courts assume that the legislature intended the words to have that meaning" and presuming that the legislature's use of the term "civil contempt" referred to " 'civil contempt' in its usual and customary meaning"). Thus, we find that when including a finding of contempt within an order on a petition for the enforcement of parenting time, a court must necessarily comply with the requirements for contempt—direct and indirect, civil and criminal—as they are commonly understood and set forth in well-established case authority.

¶ 22                                    C. Appellate Jurisdiction

¶ 23        Preliminarily, we note that the trial court's order in the present case did not contain a contempt sanction and that, generally, "[a] contempt order that does not impose sanctions is not final and not reviewable." *In re Estate of Hayden*, 361 Ill. App. 3d 1021, 1026, 838 N.E.2d 93, 98 (2005). However, the finding of contempt in this case was part of the court's order granting Lucas's petition to enforce allocated parenting time. The court's resolution of that petition was final and appealable as it disposed of the merits of the underlying litigation. See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502, 687 N.E.2d 871, 874 (1997) ("A judgment or order is 'final' if it disposes of the rights of the parties, either on the entire case or on some definite and separate part of the controversy."). Nothing in the record indicates the court reserved the issue of contempt sanctions or that it believed any further action was necessary. In fact, the record reflects otherwise, as the court explicitly stated in the final paragraph of its August 2019 order that it was entering "a final and appealable order." Ultimately, the record shows that no matters remained pending between the parties, aside from the enforcement of the court's judgment. Under these

circumstances, the court's failure to impose sanctions does not result in a lack of appellate jurisdiction.

¶ 24                           D. The Trial Court's August 2019 Order

¶ 25        Again, Alicia seeks reversal of the trial court's August 2019 order on the basis that it was not a valid civil contempt order. Significantly, however, she ignores that Lucas's petition, which sought to enforce the provisions of the previous visitation and custody order in the case, was brought pursuant to section 607.5 of the Dissolution Act. The record reflects the court granted that petition and its August 2019 order set forth relief authorized under section 607.5(c), including makeup parenting time, participation in a parent education program, enrollment in counseling, and reimbursement of expenses incurred as a result of the Alicia's violation of the previous order. The court's finding of indirect civil contempt was also part of the relief granted.

¶ 26        On review, Alicia does not challenge the trial court's finding that she failed to comply with the previous visitation and custody order—a necessary finding under section 607.5. She also makes no argument that the relief granted by the court was outside the scope of that section. Thus, we find that no matter the propriety of the court's finding of indirect civil contempt, the remainder of the court's order was authorized and properly entered pursuant to section 607.5.

¶ 27        With respect to the issue of contempt, Alicia initially claims the underlying contempt proceedings should have been deemed criminal, rather than civil, in nature because the court's contempt finding "rested on [her] prior, willful failures *** to follow the Order of Custody and Visitation," that being her denial of visitation with the children on Thanksgiving of 2018, a weekend in April 2019, and summer vacation in 2019. Alicia contends that "because these dates already passed, [she] cannot now undo her actions, and therefore cannot purge the [c]ourt's finding of civil contempt." We disagree with Alicia's argument that her conduct was subject to only a

criminal contempt finding.

¶ 28        As discussed, the same conduct may provide a basis for both criminal and civil contempt sanctions, and "the test for determining whether contempt proceedings are criminal or civil in nature is the dominant purpose for which sanctions are imposed." *Betts*, 200 Ill. App. 3d at 47. Although Alicia's past failure to comply with the previous custody and visitation order formed the basis for the trial court's contempt finding, it does not necessarily follow that only a determination of criminal contempt was proper. In fact, Alicia's failure to comply with the prior order could have resulted in either civil or criminal contempt sanctions. See *In re Marriage of Charous*, 368 Ill. App. 3d 99, 107, 855 N.E.2d 953, 961 (2006) ("[C]ivil contempt occurs when a party fails to do something ordered by the trial court, resulting in the loss of a benefit or advantage to the opposing party."); *Betts*, 200 Ill. App. 3d at 45 ("Criminal contempt may also consist of disobedience of a court order ***."). The trial court could have used its contempt power to either coerce Alicia's future compliance with the custody and visitation order or to punish her past disobedience of that order.

¶ 29        Ultimately, however, we agree with Alicia that the portion of the trial court's order finding her in indirect civil contempt is problematic. First, as stated, civil contempt involves a coercive sanction (*Felzak*, 226 Ill. 2d at 391) that "must cease when the contemnor complies" (internal quotation marks omitted) (*Covington*, 395 Ill. App. 3d at 1006). In this instance, the court's order contained no sanction from which to determine the court's dominant goal. Further, and ultimately fatal to the court's finding of indirect civil contempt, is that its order contained no purge provision, as we discuss below.

¶ 30        In *Knoll*, 2016 IL App (1st) 152494, ¶ 58, the First District addressed circumstances similar to the present case and vacated a civil contempt order on the basis that it lacked an

appropriate purge provision. There, a father filed a petition for a finding of visitation abuse and indirect civil contempt. *Id.* ¶ 10. The trial court granted the petition, found the mother in indirect civil contempt of court for failing to obey the court's previous order, and ordered the parties to "immediately determine a make-up parenting time schedule for the parenting time missed by" the father. (Internal quotation marks omitted.) *Id.* ¶ 40.

¶ 31 The mother appealed, arguing, in part, that the trial court's order did not provide her the opportunity to purge her contempt. *Id.* ¶ 57. On review, the First District stated as follows:

"In the case at bar, the order does not provide for any way for [the mother] to purge her civil contempt; it does not say that the civil contempt will be purged through make-up visitation, as [the father] attempts to argue. Furthermore, even the make-up visitation provision would not provide [the mother] with the 'keys to her cell,' as it specifies that '[t]he parties shall immediately determine a make-up parenting time schedule.' Thus, [the father's] participation is a necessary prerequisite to establishing a make-up parenting time schedule. We have found that it is not a proper purge provision where the provision requires action by a third party to be effective. [Citation.] Here, even if [the mother] reached out to establish a makeup schedule, [the father] could singlehandedly prevent such a schedule through his conduct. Thus, even if it could be considered to be a purge provision, it would not be a proper one. Accordingly, the civil contempt finding must be vacated." *Id.* ¶ 58.

See also *Bank of America, N.A. v. Freed*, 2012 IL App (1st) 113178, ¶ 44, 971 N.E.2d 1087 (holding that because the trial court's order left whether and when a contempt sanction may be lifted in a third party's hands, its purge provision was not proper).

¶ 32 Here, Lucas argues the trial court's order "adequately provided [Alicia] with the

'keys to her cell' by providing for definite obligations for [her] to fulfill ***, including [13] specific dates for parenting time." He is correct in stating that the court's order set forth several "obligations" for either Alicia or both parties to fulfill. However, like in *Knoll*, the court's order did not provide a specific and express purge provision. See also *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 112, 709 N.E.2d 287, 290 (1999) ("Whether for direct or indirect civil contempt, the order must specify what the contemnor is required to do, so that by compliance contemnor can purge himself of contempt and be discharged from jail."). Additionally, although Lucas specifically references the 13 days of makeup parenting time the court ordered, as in *Knoll*, that provision also required his participation and cooperation. As a result, assuming we consider that provision to be a purge provision, it was not proper because Alicia's ability to purge her contempt was not left solely within her own control.

¶ 33    Under the circumstances presented, we find the portion of the trial court's order finding Alicia in indirect civil contempt must be vacated. However, we disagree with any assertion by Alicia that vacating the court's indirect civil contempt finding requires reversal of the entirety of the court's August 2019 order. We find the remainder of the court's order was proper under section 607.5 of the Dissolution Act.

¶ 34                                 III. CONCLUSION

¶ 35    For the reasons stated, we vacate the portion of the trial court's order finding Alicia in indirect civil contempt of court but otherwise affirm the trial court's judgment.

¶ 36    Affirmed in part and vacated in part.

**No. 4-19-0645**

| | |
|---|---|
| **Cite as:** | *In re A.M.*, 2020 IL App (4th) 190645 |
| **Decision Under Review:** | Appeal from the Circuit Court of Clark County, No. 19-F-10; the Hon. Tracy W. Resch, Judge, presiding. |
| **Attorneys for Appellant:** | Todd M. Reardon, of Charleston, for appellant. |
| **Attorneys for Appellee:** | Esther J. Cha, of Shaner & Cha, Ltd., of Robinson, for appellee. |