No. 2--05--1233                                    filed: 12/14/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| LAURIE SHARP, | ) | of Lake County. |
| | ) | |
|     Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 04--D--759 |
| | ) | |
| STEVEN SHARP, | ) | Honorable |
| | ) | Joseph R. Waldeck, |
|     Respondent-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

Pursuant to Supreme Court Rule 304(b)(5) (155 Ill. 2d R. 304(b)(5)), respondent, Steven Sharp, appeals from the trial court's order finding him in indirect civil contempt for refusing to comply with a court order directing him to pay temporary child support and maintenance to petitioner, Laurie Sharp. In challenging the trial court's contempt order, respondent also requests this court to review the underlying support order. We affirm.

BACKGROUND

On May 30, 1993, the parties were married. They have one child together, Alexandra, who was born in 1998. On April 14, 2004, petitioner filed a petition for dissolution of marriage. On August 31, 2005, the trial court entered an order requiring respondent to pay $5,000 per month in

temporary child support and maintenance. In September 2005, pursuant to a citation to discover assets, petitioner received partial payment on the support order through garnishment of respondent's checking account, in the amount of $2,021.02. On December 5, 2005, petitioner filed a petition for a rule to show cause, alleging that respondent had disobeyed the support order by failing to make any payments to petitioner for the months of September, October, November, and December, causing an arrearage of $17,978.98 (which is $20,000 less the garnished amount of $2,021.02). On December 12, 2005, the trial court found that respondent's failure to comply with the support order was willful and found respondent in indirect civil contempt. Respondent was sentenced to 180 days in county jail, which was stayed to give respondent time to satisfy the arrearage. On December 15, 2005, respondent filed a notice of appeal from the contempt finding. On January 11, 2006, respondent was remanded to Lake County jail for failure to pay the support arrearage. On January 13, 2006, the trial court sua sponte ordered respondent's release, stayed the contempt order, and continued the matter for status. It appears that respondent is still subject to the contempt order.

The evidence at the contempt hearing established that respondent is the sole income beneficiary of a trust established by his grandfather. The trust has been respondent's primary source of income since the parties have been married. In addition to the trust income, respondent earned approximately $8,500 in 2004 and $6,500 in 2005 from consulting work. The drafter and co-trustee of the trust, Francis Beninati, testified that the trust qualifies as a spendthrift trust. Based on respondent's requests for distribution, the trustees would determine every month the minimum amount that could be distributed to respondent for his living expenses and obligations. Trust distributions were made to respondent by wire transfer into respondent's checking account until September 2005, at which time respondent instructed the trustees to send payments directly to him to avoid

garnishment of the funds. Beninati testified that the fact that the court ordered temporary support does not bind the trustees to pay those amounts. Indeed, although respondent had requested that the trust pay the support, the trustees refused to make the distributions, deciding that they were not required to make distributions for the benefit of petitioner or Alexandra.

In February 2004, the trust had an approximate value of $600,000. Respondent turned 35 years old in March 2004, and exercised his right to withdraw $200,000 from the trust at that time. The trustees continued to make monthly discretionary distributions, and between the filing of the petition for dissolution of marriage in April 2004 and these contempt proceedings in December 2005, the trustees distributed to respondent directly or for his benefit trust income in excess of $180,000, which respondent used to pay for rent, Porsche leasing payments and repairs, a Carribean vacation, attorney fees, and other living expenses. More specifically, from August 16, 2005, through November 21, 2005, the approximate period where respondent was under the order of support, the trust distributed $31,000 for his benefit. Furthermore, Beninati testified that it would be within the trustees' discretion to pay $30,000 to secure respondent's release if he were jailed for contempt.

The only support payment that petitioner had received at the time of the contempt hearing was the approximately $2,000 that was garnished from respondent's bank account.

In his defense, respondent testified that he is unable to make support payments because the money he receives from the trust is insufficient to pay his expenses, including a large amount of debt. As such, respondent recently borrowed $8,000 from friends and family to help pay his expenses. Furthermore, respondent testified that he had spent approximately $2,400 on Alexandra while she was in his care and paid petitioner $700 for other expenses; however, petitioner denied receiving any money from respondent other than the proceeds from the citation.

ANALYSIS

Before considering the merits of this appeal, we must determine whether to grant respondent's motion to supplement the record on appeal with a trust document that was entered into evidence in the divorce proceedings but is not part of the record on appeal. Petitioner has filed both an objection to the motion to supplement the record and a motion to strike respondent's reply brief. We deny respondent's motion to supplement the record on appeal and grant petitioner's motion to strike respondent's reply brief.

The appellant bears the responsibility of providing a complete appellate record for review. In re Marriage of Drewitch, 263 Ill. App. 3d 1088, 1096 (1994); People v. Pertz, 242 Ill. App. 3d 864, 905 (1993). Supreme Court Rule 329 (Official Reports Advance Sheet No. 22 (October 26, 2006), R. 329, eff. January 1, 2006) permits the amendment of a record if there are material omissions or inaccuracies or if the record otherwise is insufficient to present fully and fairly the questions involved. People v. Thomas, 201 Ill. App. 3d 255, 258-59 (1990). However, where an amendment would be unfair to a party, the courts have refused to permit the amendment. Thomas, 201 Ill. App. 3d at 259; People v. Span, 156 Ill. App. 3d 1046, 1053 (1987). Such is the case where the appellant's motion to supplement the record on appeal is filed after all briefing is complete and the opposing party has not argued the merits of the issue in its brief; in such instances, the opposing party would be unfairly prejudiced by allowing the motion. Compare Span, 156 Ill. App. 3d at 1053 (court allowed the defendant's motion to supplement the record even though it was presented after the briefs were filed because the State would not be unduly prejudiced, its brief having contained an alternative argument based on the merits of the issue), with Denniston v. Skelly Oil Co., 47 Ill. App. 3d 1054, 1070 (1977) (motion by the defendant to amend the record was denied, where it was filed after the

plaintiff's brief had already been filed and the plaintiff did not argue the merits of the issue but rather urged the defendant's procedural default on appeal).

Here, given the tardiness of respondent's motion to supplement, petitioner would be unduly prejudiced. Respondent's motion was filed after all briefing was complete. Petitioner specifically noted that she was precluded from citing to the trust provisions in her brief because the trust agreement had not been made part of the record on appeal. Therefore, petitioner was precluded from fully briefing any issue regarding the terms of the trust agreement.

Respondent had the opportunity to examine the record and ensure that no pertinent material was omitted. See Pertz, 242 Ill. App. 3d at 905. As respondent argued on appeal that the terms of the trust served as a defense to the contempt charges, it was incumbent on respondent to ensure that the trust agreement was included in the record for our review. Permitting respondent to supplement the record would set a dangerous precedent for allowing piecemeal creation of the record, with supplemental briefing and rebriefing, derogating the appellate process. Pertz, 242 Ill. App. 3d at 905. As such, we deny the motion to supplement the record on appeal.

Inasmuch as respondent is seeking to supplement the record on appeal to rebut petitioner's argument that the trust in question was not, in fact, a spendthrift trust, we deny the motion because petitioner has waived this argument. Petitioner disputes that the trust qualifies as a spendthrift trust for the first time on appeal. The nature of the trust was not in dispute in the trial court, and the parties and the court proceeded on the basis that this was a spendthrift trust. The theory under which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review. Daniels v. Anderson, 162 Ill. 2d 47, 58 (1994). To allow a party to change his or her trial theory on review would weaken the

adversarial process and the system of appellate jurisdiction, and could also prejudice the opposing party, who did not have an opportunity to respond to that theory in the trial court. Daniels, 162 Ill. 2d at 59. Again, petitioner did not contend in the trial court that this was not a spendthrift trust. Rather, she argued that, despite the spendthrift provisions, respondent was required to use the trust income to pay his support obligations. Petitioner's argument here, that this was not a spendthrift trust, constitutes a new theory that she never raised below. Thus, the argument is waived.

Next, we consider petitioner's motion to strike respondent's reply brief. The reply brief was due on June 15, 2006. Petitioner contends that the reply brief was untimely filed because, although the reply brief was originally filed with the court on June 15, 2006, the brief was returned to respondent for failure to sign the "notice of filing" and therefore was not properly filed by the due date. (The reply brief bears two stamps from the clerk of the appellate court: a "filed" date of June 15, 2006, and a "received" date of June 19, 2006.) Petitioner further alleges that she was not served with a copy of the reply brief or, for that matter, any of the legal papers filed by respondent in this case. We note that the court's copy of respondent's motion to supplement the record on appeal is not signed and the affidavit of service is not completed showing the date the motion was served on petitioner's counsel. This lends credibility to petitioner's allegations that respondent has been recalcitrant in serving papers on opposing counsel.

As respondent's reply brief bears the clerk's filing stamp date of June 15, 2006, it is questionable whether the filing would be considered untimely. See 107 Ill. 2d R. 373 ("the time of filing records, briefs or other papers required to be filed within a specified time will be the date on which they are actually received by the clerk of the reviewing court"). However, respondent has failed to comply with Supreme Court Rule 344(a), which mandates that copies of briefs must be

served upon each party and that "[p]roof of service shall be filed with all briefs and abstracts." Official Reports Advance Sheet No. 22 (October 27, 2004), R. 344(a), eff. January 1, 2005.

Supreme court rules " 'are not aspirational. They are not suggestions. They have the force of law, and the presumption must be that they will be obeyed and enforced as written.' " Estate of Roth v. Illinois Farmers Insurance Co., 202 Ill. 2d 490, 494 (2002), quoting Bright v. Dicke, 166 Ill. 2d 204, 210 (1995). Indeed, we expect litigants to comply with the supreme court rules. The rules "would have little force if the legal community perceived that we, as a court, do not enforce the rules or tailor them to fit the exigencies of the moment. Accordingly, we must emphasize that the supreme court rules are rules of procedure and that it is incumbent upon litigants to follow them." Roth, 202 Ill. 2d at 494-95.

That said, the failure to serve an opposing party does not deprive the appellate court of jurisdiction, and the filing will not be stricken unless there is evidence of harm or prejudice to that party. See Lachona v. Industrial Comm'n, 87 Ill. 2d 208, 211-12 (1981) (a party is not prejudiced by the failure to serve on her a copy of the notice of appeal if the party could file appellate briefs and argue orally); In re Marriage of Collins, 154 Ill. App. 3d 655, 658 (1987). Here, petitioner has been prejudiced by respondent's failure to serve her with a copy of the reply brief, as she did not have an opportunity to review respondent's argument or contest any inaccuracies or misstatements in the reply brief. Moreover, it would be improper for this court to consider material that has never been presented to or considered by the opposing party. Thus, because of the prejudice to petitioner, we grant the motion to strike the reply brief. Nonetheless, we have reviewed both the opening briefs and the reply brief, and we observe that the opening briefs have adequately addressed all of the legal and

factual arguments properly presented for our review. Thus, the reply brief would not have aided our decision in this case.

On the merits, respondent argues that, because his sole source of income derived from a spendthrift trust and "the terms of the trust expressly prohibit the use of the trust's income and assets to pay support and maintenance," the underlying support order is invalid. Furthermore, respondent argues that because he had no other income from which to pay the support, his failure to pay was not willful.

The review of a contempt finding necessarily requires review of the order upon which it is based. In re Marriage of Nettleton, 348 Ill. App. 3d 961, 968 (2004). Thus, we have jurisdiction to review the August 31, 2005, order compelling respondent to pay temporary maintenance and child support to petitioner.

The granting of temporary child support and maintenance is within the sound discretion of the trial court, and such awards will not be overturned on appeal absent a clear abuse of discretion. In re Marriage of Deem, 328 Ill. App. 3d 453, 457 (2002). We cannot, however, resolve this issue for respondent because he has failed to provide us with a report of proceedings from the August 31, 2005, hearing at which the court entered the support order. The appellate court is limited to reviewing the material before the trial court and deciding whether it is sufficient to support the judgment. The appellant is not entitled to have the judgment reversed without presenting a record that supports his claim that the trial court erred. See Foutch v. O'Bryant, 99 Ill. 2d 389, 391-92 (1984). Thus, he has the responsibility to ensure that the record contains a report of proceedings that includes "all the evidence pertinent to the issues on appeal." 166 Ill. 2d R. 323(a). Alternatively, the appellant may prepare a bystander's report (166 Ill. 2d R. 323(c)), or the parties can present an agreed

statement of facts (166 Ill. 2d R. 323(d)). Respondent has failed to provide this court with any evidence of what transpired at the hearing. We simply have the support order entered on August 31, 2005, directing respondent to pay petitioner $5,000 a month as temporary child support and maintenance, commencing September 1, 2005. Any doubts arising from an incomplete record must be resolved against the appellant. Foutch, 99 Ill. 2d at 392. Thus, because the record does not allow us to know what occurred at this hearing or the basis for the court's support order, we must presume that the court followed the law and had a sufficient factual basis for its ruling. See Foutch, 99 Ill. 2d at 391-92.

Next, respondent argues that the trial court erred in finding him in contempt for failing to pay child support and maintenance. Respondent claims that he adequately established that he was financially unable to make the payments and presented a valid defense, in that his sole source of income derived from a spendthrift trust the assets of which were unavailable to pay child support and maintenance. We disagree.

At the outset, we note that the trial court's contempt order was properly characterized as one for civil, and not criminal, contempt. The test for classifying contempt is the totality of the circumstances, as these influence the court's purpose to either punish the contemnor or coerce compliance with a court order. People v. Penson, 197 Ill. App. 3d 941, 945 (1990). Contempt orders may best be described as sui generis, and may partake of the features of either criminal or civil contempt. People v. Warren, 173 Ill. 2d 348, 368 (1996). "Although there has been continuing debate over the difficulty in distinguishing between criminal and civil contempt [citations], there are particular features [that] determine the nature of each." Warren, 173 Ill. 2d at 368.

The primary determinant of whether contempt proceedings are civil or criminal is the purpose for which the contempt sanctions are imposed. Betts, 200 Ill. App. 3d at 43. Generally, civil contempt is recognized as a sanction or penalty designed to compel future compliance with a court order. Warren, 173 Ill. 2d at 368. As such, civil sanctions are considered to be coercive and avoidable through obedience. Warren, 173 Ill. 2d at 368. Criminal contempt, on the other hand, is punitive and is instituted to punish, as opposed to coerce, a contemnor for past contumacious conduct. Warren, 173 Ill. 2d at 368-69.

Civil contempt proceedings have two fundamental attributes: (1) the contemnor must be capable of taking the action sought to be coerced, and (2) no further contempt sanctions are imposed upon the contemnor's compliance with the pertinent court order. Betts, 200 Ill. App. 3d at 44. The conduct sought to be coerced by civil contempt proceedings often confers benefits on opposing parties in civil litigation. Betts, 200 Ill. App. 3d at 44.

In distinguishing the purposes of criminal and civil contempt sanctions, it may be helpful to view the sanctions as either retrospective or prospective. See Betts, 200 Ill. App. 3d at 46. Criminal sanctions are retrospective in that they seek to punish a contemnor for past acts that he cannot now undo. Betts, 200 Ill. App. 3d at 46. Civil sanctions are prospective in that they seek to coerce compliance at some point in the future. Betts, 200 Ill. App. 3d at 46. That point in the future might occur upon immediate compliance in open court or upon compliance whenever the contemnor chooses to use his "key"--namely, compliance--to open the jailhouse door. Betts, 200 Ill. App. 3d at 46.

In the current case, the trial court sentenced respondent to 180 days in jail, set a "purge amount," and stayed enforcement of the order until December 29. Thus, respondent held the

"key" to his cell, and he could have purged the contempt at any time (including before or after the stay of enforcement expired). The court's order calls for no further action to be taken against respondent once he achieves compliance by paying the purge amount, and therefore its purpose is not to punish him prospectively but rather to coerce his compliance. Having determined that the classification of the contempt order as civil is correct, we move to consider respondent's arguments related to the trial court's contempt ruling.

Whether a party is guilty of contempt is within the discretion of the trial court, and we will not disturb its decision on appeal unless there has been an abuse of discretion. In re Marriage of Allen, 265 Ill. App. 3d 208, 213 (1994). The failure to make support payments as required by court order is prima facie evidence of contempt. In re Marriage of Hilkovitch, 124 Ill. App. 3d 401, 420 (1984). The burden then rests on the alleged contemnor to show that his noncompliance was not willful or contumacious and that he has a valid excuse for his failure to pay. Hilkovitch, 124 Ill. App. 3d at 420.

We find no abuse of discretion. The record contains sufficient evidence to support the court's finding that respondent's failure to make the required support payments was willful and contumacious. Respondent had not made any required support payments voluntarily, and the only money that petitioner received in satisfaction of the support order was approximately $2,000, which was garnished from respondent's bank account. Respondent has been delinquent on payments since the support order was entered. Thus, a prima facie showing of contempt was made. Hilkovitch, 124 Ill. App. 3d at 420. Furthermore, respondent failed to rebut the prima facie case of contempt, as he did not have a valid excuse for his failure to comply with the court order. There was evidence that respondent has received over $30,000 since the entry of the support order and has not applied any

part of that money to satisfy his support obligations. He did not show that he was unable to pay the support or that he was unaware of his obligation to do so. Rather, he attempted to excuse his recalcitrance by showing that the majority of his income is derived from a spendthrift trust, which by its very terms is not subject to support obligations.

First, we must ascertain whether the disbursements from the spendthrift trust are considered income for purposes of child support and maintenance determinations under the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505 (West 2004)). We find that the distributions, despite the "spendthrift" provision shielding respondent's interest from the claims of creditors and restricting alienation, do constitute income.

Income is something that comes in as an increment or addition, a gain or profit that is usually measured in money, and increases the recipient's wealth. In re Marriage of Rogers, 213 Ill. 2d 129, 136 (2004); In re Marriage of Worrall, 334 Ill. App. 3d 550, 553-54 (2002). It is defined as any form of payment to an individual, regardless of its source, and regardless whether it is nonrecurring. Rogers, 213 Ill. 2d at 138-39; In re Marriage of Lindman, 356 Ill. App. 3d 462, 466 (2005). The Act is to be liberally construed, and any resources available to the parties are to be used to promote the underlying purposes of the Act, including making reasonable provisions for spouses and minor children during and after litigation. 750 ILCS 5/102(5) (West 2004); In re Marriage of Brand, 123 Ill. App. 3d 1047, 1052 (1984). The Act creates a rebuttable presumption that all income, unless specifically excluded by the statute, is income for support purposes. Department of Public Aid ex rel. Jennings v. White, 286 Ill. App. 3d 213, 218 (1997).

Here, the trust distributions received by respondent represented a monetary gain that increased his wealth and facilitated his ability to support his wife and child. See Rogers, 213 Ill. 2d

at 137. Therefore, the trust disbursements qualify as "income" within the meaning of the Act. The fact that respondent's monthly distributions may change in the future does not alter the result, for the relevant focus is the parents' economic situation when the child support and maintenance determinations are made by the court. Rogers, 213 Ill. 2d at 138.

Furthermore, nothing in the spendthrift trust provisions defeats this finding. Spendthrift trust provisions restrict the beneficiary's ability to alienate and the beneficiary's creditors' ability to attach the trust corpus. In re Rolfe, 34 B.R. 159, 161 (Bankr. N.D. Ill. 1983). However, once trust income is paid to the beneficiary, the income is no longer subject to the protection of the spendthrift provisions in the trust, and the spendthrift provisions are not effective to shelter the trust assets from the beneficiary's creditors. In re Hawley, No. 02-83674, slip op. at 5 (Bankr. C.D. Ill. February 20, 2004); Rolfe, 34 B.R. at 161 (once funds are transferred by the trustee to the beneficiary under the terms of the trust, they become the legal property of the beneficiary and are transferable by him and leviable by his creditors). For where a trust beneficiary receives a distribution, this unfettered right of control negates any future effect of the spendthrift clause. Hawley, slip op. at 5. Since the rationale that prevents creditors from reaching the trust assets is that the beneficiary cannot reach them, it would "strain both logic and the law" to continue to enforce a spendthrift clause after the beneficiary had access to the trust assets. In re McCoy, 274 B.R. 751, 766 (Bankr. N.D. Ill. 2002). Thus, the trust income, once distributed to respondent under the terms of the trust, could be used for any purpose, including the payment of his child support and maintenance obligations. Rolfe, 34 B.R. at 161; see also White v. Williams, 172 Ill. App. 630, 636-37 (1912).

Respondent contends that the trial court improperly considered his trust income in determining his ability to pay his support obligations, basing his argument upon section 2--1403 of the Code of Civil Procedure, which states:

"No court, except as otherwise provided in this Section, shall order the satisfaction of a judgment out of any property held in trust for the judgment debtor if such trust has, in good faith, been created by, or the fund so held in trust has proceeded from, a person other than the judgment debtor.

The income or principal of a trust shall be subject to withholding for the purpose of securing collection of unpaid child support obligations owed by the beneficiary ***." 735 ILCS 5/2--1403 (West 2004).

Respondent argues that a trust may be invaded only for satisfaction of past-due child support and that to require him to pay current support obligations, when that support would have to be paid from the proceeds from his trust, violates this section. We disagree.

This section has been interpreted as allowing the garnishment of income and principal from spendthrift trusts to collect past-due child support, but prohibiting an order of withholding against a trust for future child support payments. In re Marriage of Chapman, 297 Ill. App. 3d 611, 618 (1998). Thus, it appears that petitioner could have sought garnishment of funds from the spendthrift trust to satisfy the past-due child support; however, petitioner did not seek such relief in this case. In any event, as petitioner did not seek an order of withholding against the trust for future child support payments, this section has no application here. The support order here did not compel that a judgment be satisfied through garnishment or withholding from a spendthrift trust to satisfy the obligations, but rather was a support order entered against respondent personally.

The case law makes clear that it was the legislature's intent to reach assets in spendthrift trusts where the beneficiaries of those trusts are judgment debtors in actions for child support arrearages, for the legislature intended to remedy the evil of child support obligations falling on the shoulders of only one parent where the other parent fails to fulfill his obligation of support. In re Support of Matt, 105 Ill. 2d 330, 334 (1985); Chapman, 297 Ill. App. 3d at 616-17; In re Marriage of Stevens, 292 Ill. App. 3d 994, 1000-01 (1997). It is the public policy in this state to ensure that child support judgments are enforced by all available means. Matt, 105 Ill. 2d at 334; Stevens, 292 Ill. App. 3d at 1000.

Moreover, respondent's argument that he was unable to pay support because he spent the trust money on his own living expenses does not relieve him of his obligation to pay support. The defense of poverty and misfortune for failure to make support payments has been found applicable only in the most extreme cases, notably those in which a party has no money and no way of getting money to meet support obligations. People v. Stanley, 60 Ill. App. 3d 909, 912 (1978). Further, financial inability to comply with an order must be shown by definite and explicit evidence, and that burden is not met by general testimony with regard to financial status. In re Marriage of Ramos, 126 Ill. App. 3d 391, 398 (1984). The party must show, with reasonable certainty, the amount of money he has received since the order was entered and that it has been disbursed in the payment of expenses that under the law he should pay before making any payment on the support decree. Ramos, 126 Ill. App. 3d at 398. It is insufficient to merely say that all of the contemnor's money was spent to pay living expenses. Ramos, 126 Ill. App. 3d at 399-400.

Here, respondent testified that he spent the trust money on monthly leasing payments and repairs for his Porsche, attorney fees, $2,100 a month in rent, and other unidentified expenses totaling $31,000, while he was neglecting child support and maintenance payments in a lesser amount.

Moreover, respondent borrowed over $8,000, none of which he applied toward his support obligations. Respondent chose to spend the money he received monthly on his own needs rather than on maintenance and child support payments; he must suffer the consequences of that choice. As respondent was unable to account for a large portion of the money he admittedly received, or show that these payments had to be made before he paid his support obligations, his testimony was inadequate to sustain his burden of showing that he was financially unable to make the required payments. Under these circumstances, we cannot say that the finding of willful contempt was an abuse of discretion.

Lastly, we reject respondent's argument that the contempt order was improper because respondent had no ability to purge his sentence. A party held in civil contempt must be given the keys to his or her cell, meaning that the contempt order should give the contemnor the ability to purge at any time. In re Marriage of Kneitz, 341 Ill. App. 3d 299, 307 (2003). The contempt order here makes specific provisions for respondent to purge his contempt. Also, at the hearing, the evidence established that it was within the trustees' discretion to pay the sum necessary to secure respondent's release from jail if he were to be incarcerated. Thus, the purging provision was based on respondent's ability to pay. See Ramos, 126 Ill. App. 3d 400-01. Accordingly, we affirm the contempt finding.

For the foregoing reasons, we affirm the underlying support order. We also find that the trial court did not abuse its discretion when it found that respondent's failure to pay child support and maintenance was willful and contumacious, and we affirm the contempt finding. Thus, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

BOWMAN and GILLERAN JOHNSON, JJ., concur.