2025 IL App (1st) 231791-U
No. 1-23-1791

FIRST DIVISION
January 21, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| 33 MANAGEMENT, LLC, | ) | Appeal from the Circuit Court of |
| | ) | Cook County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 2022 M1719874 |
| | ) | |
| JABARI TAYLOR, | ) | |
| | ) | |
| Defendant-Appellant. | ) | The Honorable |
| | ) | James A. Wright, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Cobbs concurred in the judgment.

**ORDER**

*Held*:  We affirm the order of eviction entered by the circuit court following a bench trial.

¶ 1  Defendant Jabari Taylor, who leased an apartment from plaintiff, appeals from the circuit court's order of eviction following a bench trial. For the following reasons, we affirm.

¶ 2  BACKGROUND

¶ 3      Defendant rented an apartment in the building located at 1640 W. Division Street in Chicago under two consecutive one-year lease agreements.

¶ 4      <u>The First Lease</u>

¶ 5      In September 2020, defendant entered into a one-year lease for the apartment, with a term beginning September 26, 2020 and ending September 25, 2021. That lease identified the owner of the property as CP West Division, LLC and the property manager as RMK Management Company; those entities are not parties to this action.

¶ 6      The record indicates that in late 2020, plaintiff herein became the owner of the property and took over management of the building.[1]

¶ 7      On September 3, 2021, defendant and plaintiff signed a "Rental Assistance Program Property Owner/Management Company Participation Agreement," on a form from the City of Chicago Department of Family and Support Services (DFSS).[2] That document reflected that defendant applied for rental assistance funds to pay his rent for the months of March 2021 to September 2021. That document indicated that defendant had a "past due amount" of $2883.77, and that defendant requested an additional $5000 in rental assistance. The document was signed by defendant and by Kenneth Lesiuk on behalf of plaintiff.

¶ 8      <u>The Second Lease and Notice of Termination</u>

¶ 9      In September 2021, defendant and plaintiff entered into a one-year lease for the same apartment unit. That lease specified monthly rent of $859 plus utilities of $135 per month, for a

---

[1] The record includes an email to defendant informing him that management of the building was being transitioned to "33 Realty" as of December 1, 2020.

[2] According to the DFSS website, "The Rental Assistance Program (RAP) provides funding to Chicagoans who are at risk of becoming homeless. RAP helps Chicagoans who have housing right now, but who may become homeless soon because they lost income or had another eligible emergency which prevents them from paying rent." https://www.chicago.gov/city/en/depts/fss/provdrs/serv/svcs/how_to_find_rentalassistanceinchicago.html

total of $994 due each month. The lease had a beginning date of September 26, 2021 and an ending date of September 25, 2022.

¶ 10        The record reflects that in 2022, defendant filed a complaint against plaintiff herein with the City of Chicago Commission on Human Rights. Defendant also filed a small claims court complaint against plaintiff. These complaints are not contained in the record on appeal.

¶ 11        On September 2, 2022, plaintiff delivered to defendant a "Notice of Termination of Tenancy" stating that it "elects to terminate your month-to-month tenancy *** and that such termination will be effective at midnight on the 25th day of November, 2022." The notice stated: "The reason for the termination is your poor payment history and disturbances of neighbors."

¶ 12                                Commencement of Eviction Action

¶ 13        On December 21, 2022, plaintiff filed an eviction summons. Initial attempts at service by the Sheriff's Office were unsuccessful. On February 15, 2023, the trial court entered an order authorizing an alias summons. Subsequent attempts to serve defendant at the apartment were unsuccessful, leading the court to authorize a second alias summons on March 15, 2023 and a third alias summons on April 19, 2023.[3]

¶ 14        On June 22, 2023, plaintiff's counsel filed an "Affidavit for Service by Posting." The record reflects that on June 27, 2023, a notice of the eviction action was posted at the Cook County Government Building, Chicago City Hall, and the Daley Center. The notice required defendant to appear on July 12, 2023. In his brief, defendant acknowledges that he "received posting by service on June 28, 2023."

¶ 15        On July 12, 2023, defendant and plaintiff's counsel appeared before the court. On that date, the court entered an order that referred the matter to the Circuit Court of Cook County's

---

[3] Defendant's brief suggests these attempts at service were unsuccessful because his name was removed from the building directory.

Early Resolution Program (ERP) for assessment. The record reflects that ERP arranged an appointment for defendant to consult with a legal aid attorney via Zoom on August 1, 2023. However, defendant remained *pro se* throughout the circuit court proceedings.

¶ 16                                    Denial of Defendant's Jury Demand

¶ 17        On August 9, 2023, the court entered an order reflecting that the case was "Not Settled" after ERP's assessment. On August 10, 2023, defendant filed an appearance form, indicating that he was *pro se*. On the form, he checked the box indicating he would like a trial with a 12-person jury.

¶ 18        The parties appeared in court on August 29, 2023. At that time, the court denied defendant's jury demand as "untimely." The court set a bench trial date of September 19, 2023, and it directed the parties to submit trial exhibits by September 12, 2023.

¶ 19             Defendant's Motion to File an Answer on the Trial Date

¶ 20        On September 19, 2023, (the date of trial) defendant filed a "Motion for Leave to File Answer to Eviction Instanter." In that submission, he asserted that he had not seen the eviction complaint or other relevant documents until August 30, 2023. He averred that he had not been given reasonable time to respond to the complaint.

¶ 21        Defendant's motion attached a proposed answer with affirmative defenses. In that proposed pleading, he denied that plaintiff was entitled to possession, and he claimed the eviction was retaliatory. Defendant stated that in June 2022, he filed a small claims complaint against plaintiff "to recover ERAP funds" that were "misused." Defendant also indicated that in June 2022, he filed a complaint against plaintiff and the building owner with the City of Chicago Commission on Human Relations. Defendant's proposed answer asserted a number of affirmative defenses, including "laches"; that the alleged violations of the lease were not "serious

or repeated" within the meaning of the governing ordinance; "racial discrimination"; and "disability discrimination" under state and federal civil rights laws. Defendant's proposed answer also purported to assert counterclaims for civil rights violations under state and federal law and sought damages of more than $3 million.

¶ 22      Attached to the proposed answer were a number of exhibits, including a number of emails between defendant and the plaintiff's property management. These included an email he wrote to plaintiff's manager (Lesiuk) on June 22, 2022, in which defendant indicated "I was offered a lease renewal on June 9th, and then I was sent a notice that it wouldn't be renew[ed] June 22nd."

¶ 23      A separate exhibit to defendant's proposed answer was a Sheriffs' Office affidavit of service, dated June 2022, from a lawsuit by defendant against plaintiff herein. However, defendant did not attach the actual complaint from that lawsuit. Separately, defendant attached documents referencing his complaint with the City of Chicago Commission on Human Relations against plaintiff and others. Defendant did not attach the actual complaint.

¶ 24      Bench Trial

¶ 25      Defendant represented himself at the September 19, 2023 bench trial. Just before trial began, when the court asked if defendant was prepared to proceed, he said: "Not really, I filed a motion today to file my answer.'" Defendant also said that he "did not have time to subpoena any witnesses." The court indicated that it would not allow defendant's motion to file his answer *instanter*. The court told defendant that trial would proceed that day, unless defendant wanted to discuss a potential settlement with plaintiff's counsel. After defendant indicated he did not wish to speak to plaintiff's counsel, trial commenced.

¶ 26    In plaintiff counsel's opening statement, its attorney said plaintiff was entitled to possession because defendant's lease expired on September 25, 2022. Plaintiff's counsel acknowledged that "On September 1, 2022, [plaintiff] notified [defendant] that they were terminating his lease effective November 25," citing poor payment history and disturbance of neighbors.

¶ 27    In defendant's opening statement, he indicated his belief that the eviction was "retaliation for me filing a lawsuit against them in small claims court, and requesting a reasonable accommodation." He stated that he had been offered a lease renewal in June 2022 but it was rescinded shortly after he "notified [plaintiff] of a lawsuit."

¶ 28    Plaintiff called Lesiuk as a witness, who identified himself as the "senior property manager." Lesiuk testified that defendant had a one-year written lease, with an expiration date of September 25, 2022. He testified that on September 1, 2022, the "management team" sent defendant a notice of nonrenewal that gave him until November 25, 2022 to vacate the apartment. Lesiuk testified that defendant was late in rental payments "[m]ore than one time." Lesiuk identified a copy of the lease and the notice of termination, both of which were admitted into evidence.

¶ 29    Asked about the "disturbance of neighbors" mentioned in the termination notice, Lesiuk testified that there was a "constant *** some sort of bas[s] that came from [defendant's] unit that constantly vibrated." Lesiuk testified that the vibration interfered with a neighboring tenant's "peace and enjoyment" and eventually caused that other tenant to move out. Lesiuk testified that defendant had remained in the unit, despite the notice of termination.

¶ 30    Defendant cross-examined Lesiuk. When asked about how many noise complaints arose from defendant's unit, Lesiuk testified there were "three to four" involving the two neighbors "to

the left and to the right" of defendant's unit. Lesiuk stated that management had emailed defendant about the noise complaints.

¶ 31    Lesiuk said he could not recall how many months defendant was late in paying rent, as he did not have his ledger with him. Lesiuk acknowledged that plaintiff had received a rental assistance grant.

¶ 32    Plaintiff's second witness was Richard Figuero, the "senior building engineer" for the apartment building. He testified that he served defendant with the notice of termination on September 2, 2022.

¶ 33    Defendant testified on his own behalf. During his testimony, he offered into evidence documents reflecting that he received two separate rental assistance grants (one in 2021 and one in 2022), to subsidize his rent for the apartment.

¶ 34    Without objection, defendant submitted into evidence the rental assistance agreement signed by defendant and Lesiuk in September 2021. Defendant referred to the portion of the agreement that stated:

> "By signing this Property Owner/Management Company Participation Agreement you agree to participate in the Rental Assistance Program. You agree to immediately cease all eviction proceedings when you receive written notification from DFSS that the Rental Assistance application is approved ***. You agree to accept rental assistance on behalf of the applicant (your tenant) and to use the approved funds to cover rent owed for the month/year of March 2021-Sept[ember] 2021."

¶ 35    Defendant testified that this reflected that his rent was paid from March to September 2021. He also testified that it "means that they agree not to pursue any evictions regarding any late payment." Defendant also offered a "property manager affidavit," dated September 3, 2021, in which plaintiff acknowledged receipt of the rental assistance grant.

¶ 36    The court asked defendant how documents from 2021 were relevant. Defendant responded that they showed that there was "no poor payment history because it was all paid."

¶ 37    Separately, defendant also offered into evidence screenshots of text messages from July 5, 2022 and August 5, 2022 that confirmed plaintiff's receipt of rental payments for those months.

¶ 38    Defendant also offered into evidence (without objection) a screenshot of a ledger showing that plaintiff received a "ERAP [Emergency Rental Assistance Program] assistance" grant of $7,352. Defendant testified that this $7,352 grant covered his monthly $994 rental obligation for more than seven months, from December 2021 through August 5, 2022. According to defendant, this demonstrated that all of his rent was paid through that date.

¶ 39    Defendant testified that in addition to the rental assistance grant, he made additional payments in 2022 that undermined plaintiff's claim that he had a "poor payment history."

¶ 40    Defendant also sought to admit an "affidavit of service for my small claims complaint" that was filed on June 3, 2022. Asked by the court to describe the nature of that the complaint, defendant said that the building's owners had "misused my emergency rental assistance for a tub, like a tub damage. And so they basically used my rental assistance to pay for something else, and I was forced to sue them for it." Defendant testified that the small claims matter had ended in May 2023 with judgment in his favor in the amount of $994, and that the building owners had "credited the money back that they had misused."

¶ 41      In further testimony, defendant asserted an affirmative defense of "retaliation." Asked by the court to explain, defendant testified that he was "offered a lease renewal on June 9, 2022" but that "14 days later they sent a notice to vacate." He testified to his belief that his small claims court case was the reason why he was not permitted to renew the lease in 2022.

¶ 42      Defendant also testified that he wished "to raise a waiver defense." He testified that plaintiff "agreed not to pursue eviction actions", which was "something that's agreed to by both the Department of Family and Support Services, and the Chicago Department of Housing."

¶ 43      Defendant also stated he wished to raise a laches defense because plaintiff "waited a very unreasonable amount of time to try to evict me." He stated: "The noise complaints *** are all from 2021. It's been almost a year and a half since that issue." Elsewhere in his testimony, defendant disputed the veracity of the noise complaints. He testified he had autism, so "I can't actually play loud music because it disturbs me." He stated that his neighbor "would actually bang on my walls" and "was making unfounded complaints."

¶ 44      Defendant also testified that he believed the eviction was motivated by racial discrimination and "also because my unit is rent controlled."

¶ 45      On cross-examination, defendant agreed that in 2021 he received rental assistance because he had not paid rent at some point in 2021. He also acknowledged that his rent for the months of January to July 2022 was paid through a rental assistance grant, not from his own funds.

¶ 46      Defendant denied that anyone spoke to him in 2022 about complaints from his neighbor. Asked about the amounts at issue in his small claims complaint, defendant recalled that he sued plaintiff for $8,754. He acknowledged that the judgment was for $994.

¶ 47    In closing argument, plaintiff's counsel said "this lease is over. They gave [defendant] ample time to vacate. *** And here we are almost 10 months later and he's still there."

¶ 48    In his closing argument, defendant maintained that the plaintiff's failure to renew his lease was discriminatory and retaliatory to "punish" him for filing a complaint and requesting repairs. He also argued the notice of termination was defective because it was dated September 1, 2022, "[b]ut my lease had not ended at that time, so that notice isn't correct."

¶ 49    In rebuttal, plaintiff's counsel said: "[the] notice of termination is dated September 1, 2022. It gives him until November 25, 2022 to vacate. So it is a proper timeframe."

¶ 50                        The Trial Court's Findings and Judgment

¶ 51    In its ruling at the conclusion of trial, the trial court remarked that this is "actually a simple case" and that it "really comes down to the fact that your lease expired" nearly a year earlier. The court told defendant: "You got a notice that they were not going to renew your lease. They gave you, it was a 60-day notice and they gave you until November 25th to vacate the property. We're now 10 months later, you're still residing in the property."

¶ 52    The trial court rejected defendant's "waiver" argument based on the rental assistance agreement, explaining: "They could not evict you for the period in which the rental assistance applied," but "[i]t didn't say they could not evict you for anything that happened after that."

¶ 53    The court also found defendant provided "no evidence" to support his defenses of retaliation and discrimination "other than a small claim case [in] which you originally asked for over 8,000 and you received a judgment in the amount of $994." The court remarked that defendant had offered "self-serving" statements but did not call any witness to substantiate his allegations of retaliation.

¶ 54    The court told defendant: "in this particular case the lease expired in September 2022. The lease expired. They do not have to allow you to stay as a tenant. *** You are a hold-over tenant." The court found plaintiff met its burden of proof to be entitled to possession.[4] On the same date, the circuit court entered a written eviction order directing plaintiff to vacate the apartment.

¶ 55    Defendant filed a timely notice of appeal on October 4, 2023 and an amended notice of appeal on October 10, 2023.

¶ 56    Counsel for plaintiff filed an appearance in this court on October 10, 2023, but has not filed anything further. In February 2024, defendant filed a *pro se* brief. After plaintiff failed to file an appellee brief, this court ordered that the case would be taken for consideration on defendant's brief only.

¶ 57                                    ANALYSIS

¶ 58    On appeal, defendant seeks reversal or vacatur of the eviction order on several grounds. He asserts the court erred in denying his jury demand, as well as denying his "eviction answer." He also claims the court erred in granting possession of the apartment to plaintiff, because he "raised germane affirmative defenses and counterclaims to defeat the Plaintiff's asserted right to possession."  He further asserts that he was denied a fair trial in violation of his due process rights, suggesting the trial judge was impartial. Finally, he suggests that as a matter of due process, the Chicago Department of Housing should have afforded him an additional "pre-termination hearing."

¶ 59    For the following reasons, we affirm.

¶ 60                    The Court Did Not Err in Finding the Jury Demand Untimely

_____

[4] The trial court noted that plaintiff did not request any money judgment.

¶ 61     We first assess defendant's claim that he was wrongfully denied his request for a jury trial. We conclude that the trial court did not err in finding his demand untimely.

¶ 62     Under section 9-108 of the Code of Civil Procedure (Code), the parties had the right to demand a jury. 735 ILCS 5/9-108 (West 2022) ("In any case relating to premises used for residence purposes, either party may demand trial by jury."). Under section 2-1105 of the Code, "A defendant desirous of a trial by jury must file a demand therefore not later than the filing of his or her answer. Otherwise, the party waives a jury." 735 ILCS 5/2-1105(a) (West 2022).

¶ 63     Supreme Court Rule 181(b)(2) provides that: "In actions for evictions *** , the defendant must appear at the time and place specified in the summons. If the defendant appears, he or she need not file an answer unless ordered by the court; and when no answer is ordered, the allegations of the complaint will be deemed denied, and any defense may be proved as if it were specifically pleaded." Ill. S. Ct. R. 181(b)(2) (eff. July 17, 2020).

¶ 64     In light of these provisions, this court in 1982 determined that a defendant in a forcible entry and detainer action must file a jury demand by the time he is required to appear. *First Bank of Oak Park v. Carswell*, 111 Ill. App. 3d 71, 73 (1982) (subsequent jury demand was untimely where defendant did not appear in court on the date that summons advised him that his personal appearance was required). Recent decisions of this court have adhered to that rule. See, e.g., *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶¶ 23-24 (court did not err in striking jury demand where defendant filed it four days after he was required to appear); *CPCA Trust 1 v. Brown*, 2018 IL App (1st) 180121-U, ¶¶ 49-50 ("The first jury demand was filed by Edith in January 2017, well after she was required to appear in the matter. Edith's jury demand was therefore untimely *** . As a result, the circuit court properly denied her a jury trial.").

¶ 65 Here, the record and defendant's brief reflect that (after several failed service attempts), he was served with a notice that required him to appear on July 12, 2023. He did, in fact, appear on that date. Defendant did not file a jury demand until August 10, nearly one month later. Accordingly, defendant's jury demand was untimely. Thus, we reject this claim of error.

¶ 66 <u>The Trial Court Did Not Err in Declining to Permit Defendant's Answer</u>

¶ 67 Apart from the denial of his jury demand, defendant's brief states that the court erred in denying his "eviction answer, affirmative defenses, counter claims and post-trial motions." We construe this as a claim that the trial court erred in declining to permit his proposed answer.[5] Defendant suggests he should have been permitted to file this answer because he raised "germane defenses" and counterclaims "relating to why the Plaintiff sought possession", including "retaliation, waiver, laches, racial and disability discrimination."

¶ 68 We cannot say the court erred in declining to entertain this pleading, which was filed on the day of trial.

¶ 69 As mentioned above, we note that no answer was required under Supreme Court Rule 181(b)(2). "In actions for evictions (see Rule 101(b)), the defendant must appear at the time and place specified in the summons. If the defendant appears, he or she need not file an answer unless ordered by the court; and when no answer is ordered, the allegations of the complaint will be deemed denied, and any defense may be proved as if it were specifically pleaded." Ill. S. Ct. R. 181(b)(2) (eff. July 17, 2020). Here, as no answer was filed on the appearance date, the allegations were deemed denied.

---

[5] Although his brief refers to "post-trial motions," the record does not show that he filed any post-trial motion, except for a motion to stay the eviction order pending appeal. Moreover, his notice of appeal did not specify that he sought to challenge any post-trial ruling, and he makes no argument regarding any post-trial ruling.

¶ 70 Defendant nevertheless sought to file an answer with affirmative defenses and counterclaims on the scheduled trial date. Essentially, defendant sought leave to amend his answer from a general denial to a denial including affirmative defenses and counterclaims. Thus, we find it is appropriate to construe the trial court's ruling as the denial of a motion to amend a pleading, and we review it as such.

¶ 71 Generally, amended pleadings are governed by section 2-616 of the Code, which provides in relevant part: "At any time before final judgment amendments may be allowed on just and reasonable terms *** changing the cause of action or defense or adding new causes of action or defenses *** which may enable the plaintiff to sustain the claim *** or the defendant to make a defense or assert a cross claim." 735 ILCS 5/2-616(a) (West 2022).

¶ 72 Whether a trial court permits an amended pleading is a matter of discretion, and we will not reverse the decision on a motion to amend a pleading absent an abuse of discretion. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69. A decision is an abuse of discretion only when it is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view of the trial court. *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 816 (2008).

¶ 73 In determining whether to allow an amendment to the pleadings, the trial court considers the following factors: (1) whether the proposed amendment would cure a defect in the pleadings; (2) whether the proposed amendment would prejudice or surprise other parties; (3) whether the proposed amendment is timely; and (4) whether there were previous opportunities to amend the pleading. *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 45.

¶ 74 Applied to this case, these factors did not weigh in favor of allowing defendant's motion to file a new answer on the date of trial. As the first factor, his proposed answer was not needed to cure a defect in the pleadings. Indeed, even without filing *any* answer, the allegations of the

eviction complaint were "deemed denied," and defendant was permitted to prove "any defense *** as if it were specifically pleaded." Ill. S. Ct. R. 181(b)(2) (eff. July 17, 2020).

¶ 75 As to the second factor, the trial court could certainly find that the assertion of new affirmative defenses and counterclaims could cause "prejudice or surprise" to plaintiff, particularly given the timing of the motion. The basis of the eviction action was straightforward: expiration of the lease and notice of termination. Defendant's proposed pleading sought to introduce a number of new topics on the day of trial. The court could reasonably find that plaintiff would be unfairly surprised by having to prepare to respond to these newly-raised topics and that any resulting delay would be prejudicial, especially since the matter had been pending for several months. Similarly, the court could reasonably conclude (for purposes of the other two factors) that defendant's pleading was not "timely" and that defendant had missed previous opportunities to present it.

¶ 76 Defendant acknowledges he was served in June 2023. The matter was referred to the Early Resolution Program, but settlement efforts failed by August 9, as indicated by the court order of that date. On August 29, 2023, the court informed the parties that trial would commence on September 19. There is nothing in the record indicating that defendant expressed any desire at that time to file a pleading with new defenses or counterclaims. He also did not file any submission on or before September 12, *i.e.*, the date that trial exhibits were due. Rather, defendant apparently waited until the very date of trial before seeking to file his pleading.

¶ 77 Under these circumstances, we cannot say the court was unreasonable in declining defendant's motion to file his pleading *instanter* on the day of trial. As this ruling was not an abuse of discretion, we reject this claim of error. Moreover, we note that despite this ruling,

defendant was free to attempt to prove "any defense *** as if it were specifically pleaded." Ill. S. Ct. R. 181 (b)(2) (eff. July 17, 2020).

¶ 78 <u>The Trial Court's Findings Were Not Against the Manifest Weight of the Evidence</u>

¶ 79 We turn to defendant's claim that the court erred in granting possession to plaintiff after trial. Defendant asserts that the plaintiff "did not present sufficient information or evidence to support [its] claim" that it was entitled to possession. He also claims plaintiff used "false testimony" and that the eviction was "meritless and not brought in good faith." He asserts he raised "germane affirmative defenses and counterclaims" to defeat plaintiff's right to possession. For the following reasons, we decline to disturb the findings of the trial court.

¶ 80 An eviction action under the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.*) is a limited proceeding, the sole purpose of which is to determine who is entitled to immediate possession of real property. *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14. Such an action is proper where a lessee "holds possession without right after the termination of the lease or tenancy by its own limitation, conditions or terms or by notice to quit or otherwise." 735 ILCS 5/9-102(a)(4) (West 2022).

¶ 81 "The plaintiff in an eviction action bears the burden of proof in establishing its right to possession and must prove its allegations by a preponderance of the evidence. [Citation.]" *Board of Directors of Winnitt Park Condominium Association v. Bourdage*, 2021 IL App (1st) 192536, ¶ 33. The defendant in an eviction action has a right to assert any germane defenses in response to the plaintiff's claim of possession. *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 609 (2007); 735 ILCS 5/9-106 (West 2022) ("The defendant may under a general denial of the allegations of the complaint offer in evidence any matter in defense of the action. Except as

otherwise provided in section 9-120, no matters not germane to the distinctive purpose of the proceeding shall be introduced by joinder, counterclaim or otherwise.").

¶ 82     Since this was a bench trial, a deferential standard of review applies. "The manifest weight of evidence standard is generally used to review a judgment after a bench trial [citation] because the trial judge, as a trier of fact, is in a superior position to observe witnesses, judge their credibility, and determine the weight their testimony should receive." *Battaglia v. 736 N. Clark Corp.*, 2015 IL App (1st) 142437, ¶ 23.   A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or where the findings appear to be unreasonable, arbitrary, or not based on the evidence. *Id.*

¶ 83     In this case, the trial court determined that plaintiff was entitled to possession because defendant's lease expired. The trial court also found that defendant failed to prove his affirmative defenses, including his claims of retaliation and discrimination.

¶ 84     The determination that plaintiff was entitled to possession is not against the manifest weight of the evidence.

¶ 85     Notably, defendant did not dispute that his lease expired on September 25, 2022. This is apparent from the document, which was admitted in evidence. Nor did defendant dispute that on September 2, 2022, plaintiff served him with a notice of termination that directed him to vacate by November 25, 2022—that is, 60 days after the expiration date of the lease.

¶ 86     Defendant argues that the notice of termination was defective. He notes that the notice of termination referred to a "month-to-month tenancy," when in fact it was served upon him before the end of the one-year lease period. However, he does not cite anything to suggest this apparent error invalidated the termination notice or entitled him to remain in the premises beyond November 25, 2022. To the contrary, the relevant provision of the Chicago Residential Landlord

and Tenant Ordinance (RLTO) indicates that a tenant is not entitled to stay more than 60 days after receipt of a termination notice:

> "For any residential tenancy of six months to three years, the landlord shall notify the tenant in writing at least 60 days prior to the stated termination date of the rental agreement of the landlord's intent to terminate a periodic tenancy ***. *If the landlord fails to give the required written notice, the tenant may remain in the dwelling unit for up to 60 days after the date on which written notice is given to the tenant, regardless of the termination date specified in the notice or in an existing rental agreement.*" (Emphasis added.) Chicago Municipal Code § 5-12-130(j)(2) (amended Nov. 24, 2020).

¶ 87   This language plainly applies to this case. That is, the landlord (plaintiff) did not serve notice of termination "at least 60 days prior to" the end of the stated termination date of the rental agreement (September 25, 2022). Thus, under the RLTO, defendant had the right to remain in the apartment "for up to 60 days after the date on which written notice is given to the tenant", *i.e.*, 60 days after he received the notice on September 2, 2022, or November 1, 2022. See *id*. There is no dispute that he remained in the apartment long after that time.

¶ 88   Thus, the court properly found that plaintiff was entitled to possession due to expiration of the lease. As eviction was premised on expiration of the lease and not due to any violations of the lease, plaintiff did not need to rely on any violations of the lease to be entitled to possession. In turn, insofar as defendant argues that plaintiff failed to prove he had a "poor payment history"

or that there were noise complaints, those arguments are unavailing to defeat plaintiff's right to possession.

¶ 89     We also find the court did not err in finding defendant failed to prove his affirmative defenses, including claims of retaliation and discrimination. In his brief, defendants argues he proved the defense of retaliation. That is, he claims he showed that plaintiff would have renewed his lease for another year, but that plaintiff did not do so in retaliation for his small claims court case or for other improper reasons.

¶ 90     By statute, it is "against the public policy of the State for a landlord to terminate or refuse to renew a lease or tenancy of property used as a residence on the ground that the tenant has complained to any governmental authority of a bona fide violation of any applicable building code, health ordinance, or similar regulation." 765 ILCS 720/1 (West 2022). Similarly, section 5-12-150 of the RLTO prohibits retaliatory action by a landlord if a tenant complains of code violations to a governmental agency, requests that the landlord make required repairs, or exercises any other lawful right. Chicago Municipal Code § 5-12-150 (amended Nov. 6, 1991).

¶ 91     Retaliatory eviction is a legitimate defense to an eviction action. *American Management Consultant, LLC v. Carter*, 392 Ill. App. 39, 53 (2009). The trial court's finding that the proponent of the defense failed to put forth sufficient evidence of retaliatory eviction will not be disturbed unless its finding is contrary to the manifest weight of the evidence. *Id.*

¶ 92     In this case, defendant testified at trial that he believed plaintiff's decision not to renew his lease was based (at least in part) on a small claims court case he filed in June 2022. The record does not contain much documentation of that matter, although defendant testified that it was based on plaintiff's misuse of rental assistance "for a tub, like a tub damage." Defendant testified that the action resulted in a judgment in his favor for $994.

¶ 93    The trial court found that defendant had not proven retaliation, noting he made "self-serving" statements but did not otherwise "substantiate" this claim. Keeping in mind the deference shown to the trial court as factfinder, we cannot say that finding was against the manifest weight of the evidence. Notably, no other witness testified about the small claims complaint or whether it impacted plaintiff's decision not to renew the lease.[6] Thus, there was no testimony corroborating defendant's retaliation defense. The trial court recognized the small claims case, but it did not think this was enough to prove a retaliatory motive for the non-renewal of defendant's lease.

¶ 94    We cannot say that this conclusion was unreasonable, especially as there was evidence indicating plaintiff may have had other legitimate reasons not to renew defendant's lease. Specifically, Lesiuk testified that defendant did not always pay rent on time, and he testified that there were multiple noise complaints from defendant's neighbors. In his brief, defendant claims the alleged noise complaints were "baseless and unsubstantiated allegations based on no evidence." We disagree, as the trial court was entitled to believe Lesiuk's testimony that he had personal knowledge of multiple noise complaints.

¶ 95    Elsewhere, defendant's brief disputes that he had a poor payment history, but he does so by making assertions that were not elicited at trial. He states he paid his rent on time but "the management company and Lesiuk turned off the Defendant's online payment portal several times, [so] he was forced to give checks or certified funds. After the Defendant did this, the Plaintiff processed these payments late, and charged him late fees." Defendant's brief does not cite any related testimony at trial, and thus we cannot consider it. See *In re Marriage of Sharp,*

---

[6] In this respect, we note that defendant could have benefitted from the assistance of legal counsel in identifying potentially helpful witnesses and evidence to elicit at trial to substantiate his claims.

369 Ill. App. 3d 271, 278 (2006) (The appellate court is limited to reviewing the material before the trial court and deciding whether it is sufficient to support the judgment.)

¶ 96    We also reject defendant's argument that plaintiff should not have been awarded possession "due to their self-help eviction tactics prior to trial." He suggests that plaintiff violated section 9-101 of the Code, which prohibits forcible entry. 735 ILCS 5/9-101(West 2022) ("No person shall make an entry into lands or tenements except in cases where entry is allowed by law, and in such cases he or she shall not enter with force, but in a peaceable manner."). Defendant claims that this was violated because "Plaintiff removed him from the building directory and engaged in an eviction prior to the September 19, 2023 hearing." This contention is not properly before us, as it was not raised in the trial court. See *People v. Reimolds*, 92 Ill. 2d 101, 106-07 (1982) ("A court of review must decide the issues before it solely on the basis of the record made in the trial court."). In any event, even if plaintiff removed defendant's name from the building directory, defendant does not cite any authority suggesting that it would constitute a forcible entry in violation of section 9-101, or that it would otherwise negate plaintiff's right to possession of the apartment.

¶ 97                    Defendant Was Not Denied Due Process or a Fair Trial

¶ 98    We turn to defendant's claims that his due process rights were violated. Defendant suggests that he was denied procedural due process, citing *Goldberg v. Kelly*, 397 U.S. 254 (1970) (concluding that due process requires a pretermination evidentiary hearing when public assistance payments to welfare recipient are discontinued).

¶ 99    "Procedural due process claims challenge the constitutionality of the specific procedures used to deny a person's life, liberty, or property." *In re M.A.*, 2015 IL 118049, ¶ 35. "The fundamental requirements of due process are notice of the proceedings and an opportunity to

present any objections." *Id.* In an eviction action, "due process requires that the underlying possession claim be resolved in conformity with the procedural requirements of trial, summary judgment, or judgment on the pleadings." *Circle Management, LLC v. Olivier*, 378 Ill. App. 3d 601, 611 (2007).

¶ 100     Defendant does not claim that he lacked notice of the action, or that he was denied a trial. Instead, he claims he was denied time to prepare for trial and "denied the opportunity to be meaningfully heard." We disagree. The record shows that on August 29, 2023, the court set a due date of September 12 for trial exhibits and a bench trial date of September 19. The record does not reflect that defendant objected to that trial date, or that he ever asked for more time to prepare until the very day of trial.

¶ 101     Further, the trial transcript belies defendant's claims that he was denied an opportunity to be heard. The record shows the trial court permitted defendant to testify at length about his claims, including his affirmative defenses of retaliation. The court also permitted defendant to admit several exhibits and to cross-examine plaintiff's witnesses.

¶ 102     In conjunction with his due process claims, defendant alleges that the judge's conduct deprived him a fair trial. He claims the judge "mocked him" and "refused to provide legal information" to him but "gave legal advice to the plaintiff." He also criticizes the judge for characterizing his testimony as "self-serving." We find these criticisms unfounded.

¶ 103     Judges "are presumed impartial, and the burden of overcoming the presumption by showing prejudicial trial conduct or personal bias rests on the party making the charge." *In re Marriage of O'Brien*, 2011 IL 109039, ¶ 31 (citing *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002). Defendant does not overcome this presumption. This court has reviewed the trial transcript. It does not reflect that the trial court "mocked" defendant or otherwise treated him

unfairly. Although the trial court did refer to defendant's testimony as "self-serving," it did so in context of evaluating the evidence at the conclusion of trial. In context, we think this remark merely reflected that no other witness corroborated defendant's claim of a retaliatory motive. As the finder of fact, the trial court was entitled to make such comments in weighing the evidence at the conclusion of trial.

¶ 104                    Defendant's Challenge Based on the Affordable Requirements Ordinance

¶ 105          Finally, apart from conduct at trial, defendant's brief appears to assert a procedural due process claim based on the Affordable Requirements Ordinance (ARO) and its implementation by the city. See Chicago Municipal Code § 2-44-085 (Added April 21, 2021; last amended May 22, 2024).[7] In this portion of his brief, defendant states that:

> "the ARO ordinance outlines that to terminate a tenancy, it must be series [sic] and repeated.[8] Does the Fourteenth Amendment require the Chicago Department of Housing to hold a pre-termination hearing before bringing an eviction action in a civil court against tenants, if so, does the lack of a termination hearing violate Due Process. The City of Chicago allows for landlords to terminate the tenancy of an Affordable housing residents [sic] without affording the opportunity for an evidentiary hearing prior to termination and denies the tenant procedural due process."

---

[7] The ARO is available at https://codelibrary.amlegal.com/codes/chicago/latest/chicago_il/0-0-0-2693409

[8] This is an apparent reference to the Rules promulgated under the ordinance, which state a landlord "may not terminate the tenancy or refuse to renew the lease of an affordable unit except for serious or repeated violation of the terms and conditions of the lease." Chicago Affordable Requirements Ordinance Rules, Rule 10.8, available at Chicago.gov/content/dam/city/depts/doh/aro/ARO_Rules_rev_Feb_2024.pdf

Citing *Goldberg*, defendant suggests that that the Chicago Department of Housing (DOH) should have "a pre-termination procedure in place for tenants that are in ARO" as a matter of due process and equal protection.

¶ 106    For multiple reasons, we decline to attempt to assess the merits of this claim. As a threshold matter, the record does not establish whether defendant has standing to challenge any aspect of the ARO, as it is not clear that his lease of the apartment in question was subject to that ordinance. We note that the City's Rules under the ordinance require the DOH to "verify that the prospective tenants are income qualified." Chicago Affordable Requirements Rules, Rule 10.2 (Updated February 9, 2024). The Rules set forth various steps a landlord and prospective tenant must take to "income qualify" a tenant, including completion of a Tenant Income Certification form that must be submitted to the DOH for its approval before a lease is signed. See *id*. at Rule 10.4. In this case, the record is insufficient to tell whether the applicable lease was made pursuant to the ARO. The record shows defendant received funds through the Rental Assistance Program, but that does not establish that the lease was approved under the ARO.

¶ 107    Since we cannot discern from the record whether defendant's tenancy was subject to the ARO, we cannot conclude that he is an interested party with standing to challenge the ordinance. See *Mendez v. City of Chicago*, 2023 IL App (1st) 211513, ¶ 16 (concluding that plaintiffs "lack standing to challenge the inspection provision of the ordinance [section 4-16-230 of the Municipal Code] because they are not interested parties, as required, they do not have a personal claim, right, or status that is capable of being affected. [Citation] They also have not sustained, and are not in immediate danger of sustaining, a direct injury as a result of the enforcement of the challenged ordinance."); *People v. Jaudon*, 307 Ill. App. 3d 427, 435-36 (1999) (in challenge to city ordinance allowing seizure of vehicles that contained unregistered firearms, defendants

lacked standing to argue the ordinance violated the due process rights of innocent vehicle owners "since none of them were innocent vehicle owners" and a "party does not have standing to assert the constitutional rights of others not before the court.").

¶ 108    In any event, the record does not show that defendant ever raised such a challenge in the circuit court. Thus, it is forfeited. "In civil cases, constitutional issues not presented to the trial court are deemed forfeited and may not be raised for the first time on appeal. [Citations.]" *Sherman v. Indian Trails Public Library District*, 2012 IL App (1st) 112771, ¶ 21. Defendant apparently asserts a claim that DOH violated his due process rights because it did not conduct a hearing *before* plaintiff's eviction action. That question was never before the circuit court.

¶ 109    Moreover, it is apparent that the DOH would be entitled to respond to any due process challenge to its procedures pursuant to the ARO. DOH was not a party to the instant action and is not a party to this appeal. Under these circumstances, it would clearly be inappropriate for this court to attempt to address the merits of the due process claim related to ARO.

¶ 110    The remaining contentions in defendant's brief are not supported by the record or are not adequately argued with supporting authorities. See *People v. Hui*, 2022 IL App (2d) 190846, ¶ 52 (A reviewing court is "entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; any arguments inadequately presented are forfeited.")

¶ 111    Before we conclude, we note that it is apparent that defendant could have benefited from legal counsel in the trial court. This case is a good example of why *pro se* litigants should be encouraged to take advantage of free or low-cost legal assistance resources.

¶ 112                                 CONCLUSION

¶ 113    For the foregoing reasons, the judgment of the Circuit Court of Cook County is affirmed.

¶ 114    Affirmed.